Lawrence LUCAS, Plaintiff,

v.

SOUTH NASSAU COMMUNITIES
HOSPITAL and Gail Lambert,
Defendants.

No. 95–CV–2356 (JS).

United States District Court,
E.D. New York.

Feb. 23, 1998.

Lawrence Lucas, AAA Vacuum & Sewing Co., Oceanside, NY, plaintiff pro se.

Cheryl R. Saban, Paul, Hastings, Janofsky & Walker, New York City, for defendant South Nassau Communities Hospital.

Max Goldweber, Goldweber and Hershkowitz, Mineola, NY, for defendant Gail Lambert.

## MEMORANDUM AND ORDER

SEYBERT, District Judge.

Pending before the Court are defendants' motions for summary judgment in this Title VII action.

## BACKGROUND

The parties have submitted a Joint Pre-Trial Order ("JPTO") stipulating to the factual assertions at issue.

Plaintiff Lawrence Lucas was hired on January 18, 1993, as an attendant in the Central Supply Department of defendant South Nassau Communities Hospital ("South Nassau"), and voluntarily resigned his employment on September 1, 1994. Plaintiff filed a charge with the Equal

Employment Opportunity Commission (EEOC) on October 3, 1994 and filed the complaint in the instant action on June 13, 1995, within ninety days after receiving a Notice of Right to Sue letter from the EEOC. An amended complaint was filed on April 13, 1996.

Defendant Gail Lambert supervised the Central Supply Department during plaintiff's employment at South Nassau, except while she was on leave of absence for the two month period of June 14, 1994 through August 11, 1994.

Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and the New York State Human Rights Law as codified in New York Executive Law § 296 et seq. as against both defendants, and New York State supplemental claims of intentional infliction of emotional distress and assault and battery as against defendant Gail Lambert.

Plaintiff's theory of the case is that Gail Lambert sexually harassed him on a regular basis in a manner sufficiently egregious to constitute a hostile work environment offensive to a reasonable person in plaintiff's position. Defendant South Nassau failed to act on plaintiff's complaints and in so doing exhibited an intentional or reckless indifference to plaintiff's federally protected rights. Plaintiff further asserts that throughout his employment at South Nassau there was no internal administrative procedure for registering a complaint of sexual harassment, at least not contained within the South Nassau Employee Handbook.

Plaintiff avers that he was constructively discharged on or about September 1, 1994, and that after an unemployment hearing, Administrative Law Judge Ben Nico concluded on December 12, 1994: "I accept the claimant's sworn and credible testimony that he was sexually harassed by a female supervisor and although he complained to the employer, no action was taken against his complaints. Accordingly, claimant quit his job with good cause."

Plaintiff contends this determination is the law of the case in the instant action.

The defendants move for summary judgment on all of plaintiff's claims. First, the defendants jointly assert that all but two of the allegations of sexual harassment occurred prior to the 300 day charge filing period, and therefore those prior allegations are time-barred. The two surviving incidents, defendants contend, are innocuous and do not support a sexual harassment claim because they are neither sufficiently severe or pervasive to create a hostile work environment. Second, the defendants aver that assuming arguendo all plaintiff's purported incidents of sexual harassment are considered, as a matter of law they are not sufficiently severe or pervasive to create a hostile work environment. Third, the defendants contend that plaintiff's gender discrimination claim was not raised in the EEOC charge, and therefore, is not properly before this Court. Finally defendants maintain that plaintiff voluntarily resigned and consequently he was not constructively discharged.

The defendant South Nassau maintains that its response to plaintiff's allegations was appropriate and timely and therefore Gail Lambert's conduct cannot be imputed to the employer.

The defendant Gail Lambert avers the following defenses in response to plaintiff's claims. First, an individual may not be held personally liable under Title VII. Second, Lambert's conduct was not extreme or outrageous, thus a claim for intentional infliction of emotional distress is not actionable. Third, plaintiff was never placed in imminent apprehension of harmful or offensive conduct by the actions of Gail Lambert, and consequently, plaintiff has no cognizable claim of assault. Finally, plaintiff's intentional tort claims are barred by the applicable statute of limitations.

## FACTUAL STIPULATIONS

The specific instances of sexual harassment have been stipulated to as: (1) Lam-

bert allegedly brushed up against Plaintiff on three occasions when he passed by her in a narrow aisle or area about two feet wide in the Central Supply Department. JPTO ¶ 78(1); (2) Lambert's hand allegedly touched plaintiff on three occasions. JPTO ¶ 78(2); (3) Lambert's hand touched plaintiff's back or shoulder briefly on five to seven other occasions. JPTO ¶ 78(3); (4) Lambert allegedly suggested on one occasion that plaintiff wanted to go to bed with her. JPTO ¶ 78(4); (5) Lambert allegedly asked plaintiff the color of his underwear on two or three occasions. JPTO ¶ 78(5); (6) Lambert allegedly said "fuck you" on two occasions. JPTO ¶ 78(6).

The specific ways in which plaintiff was discriminated against have been stipulated to as: (1) Lambert told plaintiff that he must sign six blank pages if he wanted to work, and defendant South Nassau failed to properly supervise Lambert with respect to this conduct. JPTO ¶ 15(1); (2) South Nassau fired Ms. Lambert for cursing, while it did not fire the plaintiff for cursing.[1] JPTO ¶ 15(2); (3) South Nassau fired Jorge Berroto for soliciting a patient for oral sex, but did not fire Lambert for her treatment of plaintiff. JPTO ¶ 15(3); (4) Lambert wrote up the Central Supply Department attendants, but not the aides, for using improper sterilization procedures. JPTO ¶ 15(4); and (5) Lambert directed plaintiff, and not other available male employees in the Central Supply Department, to perform unidentified work tasks on three to five occasions, after which plaintiff asked someone else in the department to perform the task for him, and they did. JPTO ¶ 15(5).

Plaintiff asserts that Lambert retaliated against him because he yelled at her for asking his co-workers if he had borrowed money from them, and because he refused to sign the six blank pages. JPTO ¶ 18. The specific instances of retaliation are stipulated to as: (1) Lambert allowed Norma Estevez, another employee in the Central Supply Department, to pester Nury Soto, plaintiff's current fiancée. JPTO ¶ 19(1); (2) Lambert did not file a Workers' Compensation Report for plaintiff's elbow injury at the time he injured his elbow. JPTO ¶ 19(2); and (3) Lambert allegedly required plaintiff to sign six blank pages. JPTO ¶ 19(3).

## DISCUSSION

### I. STANDARDS FOR GRANTING SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), courts may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden of proof is on the moving party to show that there is no genuine issue of material fact, *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)), and "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v.*

---

1. The significance of the subsequent firing of Ms. Lambert, allegedly for cursing, while plaintiff was not fired for similar behavior, escapes the Court. Possible explanations, all devoid of legal significance, include: (1) because Lambert was allegedly fired for using profanity, plaintiff must not have cursed otherwise he too would have been fired; (2) defendant South Nassau waived its right to raise plaintiff's profanity at this stage, for failure to take action at the time of the utterances; (3) plaintiff was disparately treated because he was not fired for cursing, while the female defendant Lambert was. Suffice it to say that Lucas was timely admonished about his vulgar vernacular and receiving better treatment than others does not support a claim of discrimination.

*Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citing 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93–95 (1983)).

A party opposing a motion for summary judgment " 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Id.* at 248, 106 S.Ct. at 2510 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). Under the law of the Second Circuit, "when no rational jury could find in favor of the nonmoving party because the evidence is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo,* 22 F.3d at 1224 (citing *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988)). Moreover, the "salutary purposes of summary judgment— avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985).

The facts presented here are construed according to this standard.

## II. SEXUAL HARASSMENT AND DISCRIMINATION CLAIMS

■ The standards for proving discrimination under Section 296 of the New York Executive Law are the same as under Title VII, *see Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 479, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982) ("The elements of a successful employment discrimination claim [under New York and federal law] are virtually identical."); *Stetson v. NYNEX Service Co.,* 995 F.2d 355, 360 (2d Cir.1993) (plaintiff's claim under New York's Human Rights Law "is governed by the same standards as his federal claim"), and accordingly, the New York Executive Law inquiry is subsumed within the Title VII analysis.

Under Title VII, employers are forbidden from discriminating "against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ..." 42 U.S.C. § 2000e–2(a)(1).

■ There are two types of sexual harassment violative of Title VII:(1) quid pro quo, and (2) hostile work environment harassment, and Lucas asserts the latter. "Hostile work environment sexual harassment occurs when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 (2d Cir.1995) (quoting *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64–65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The workplace must be permeated with "discriminatory intimidation, ridicule, and insult ... sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (internal citations omitted).

In determining whether the hostile environment should be imputed to the employer, *Tomka* has provided: "if a plaintiff's supervisor is the alleged harasser, an employer will be liable if the supervisor uses his actual or apparent authority to further the harassment, or if the supervisor was otherwise aided in accomplishing the harassment by the existence of the agency relationship.... By contrast, where a low-level supervisor does not rely on his supervisory authority to carry out the harassment, ... an employer will not be liable unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it." *Tomka,* 66 F.3d at 1305 (internal citations omitted).

■ A court must consider the totality of the circumstances in determining

whether a workplace is hostile or abusive. *Harris,* 510 U.S. at 22, 114 S.Ct. at 371.

## A. 300 DAY LIMITATION

The defendants first assert that the vast majority of plaintiff's allegations are time-barred because they are outside the statutory requirement that a claimant must file the charge within 300 days of the alleged discriminatory action. *See* 42 U.S.C. § 2000e–5(e). This statutory requirement is analogous to a statute of limitations. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394, 102 S.Ct. 1127, 1133, 71 L.Ed.2d 234 (1982); *Butts v. City of New York Dep't of Housing,* 990 F.2d 1397, 1401 (2d Cir.1993).

■ The parties agree that Lucas filed his charge with the EEOC on October 3, 1994. JPTO ¶ 72. Therefore, only events that occurred during the 300–day period prior to filing—on or after December 7, 1993—are actionable under Title VII. Of those instances in which the plaintiff has specified an approximate date of occurrence, only the two touching episodes of August 1994 fall within the 300 day period. The brushing incidents and the color of underwear inquiries occurred prior to December 7, 1993. As well, it was in August or September of 1993 when Lambert purportedly required plaintiff to sign the six blank pages. Lucas' claims of discrimination do not evince an ongoing discriminatory policy or practice to amount to a continuing violation, *see Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994), and hence, the continuing violation exception is inapplicable. The isolated incidents that arose within the 300 day time period do not satisfy the minimal legal requirements of a sexual discrimination claim, thus requiring plaintiff's cause of action under Title VII to be dismissed.

## B. NEW YORK EXECUTIVE LAW § 296

Plaintiff has also asserted a claim under New York Executive Law § 296, and although it is analyzed in an identical fashion

to Title VII, the claim is subject to a three year statute of limitations. N.Y.Civ. Prac.L. & R. 214(2). *See also Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996). The Court will consider all of plaintiff's allegations in this analysis.

■ After reviewing the Joint Pre–Trial Order, the Court is not convinced of the severity or sufficiency of plaintiff's claims of harassment and discrimination. The plaintiff's allegations of harassment as stipulated in the Joint Pre–Trial Order involved: (1) Ms. Lambert allegedly brushed up against plaintiff on three remembered occasions. JPTO ¶ 78(1); (2) Ms. Lambert's hand also allegedly touched Plaintiff on three remembered occasions. JPTO ¶ 78(2); (3) Ms. Lambert's hand allegedly touched plaintiff's back or shoulder briefly on five to seven other unidentified occasions. JPTO ¶ 78(3); (4) Ms. Lambert allegedly suggested on one occasion that plaintiff wanted to go to bed with her. JPTO ¶ 78(4); (5) Ms. Lambert allegedly asked plaintiff the color of his underwear on two or three occasions. JPTO ¶ 78(5); and (6) Ms. Lambert allegedly said "fuck you" on two unidentified occasions. JPTO ¶ 78(6).

Not all workplace conduct that may be described as harassment is actionable under Title VII, *see Meritor Savings Bank,* 477 U.S. at 67, 106 S.Ct. at 2405, because Title VII was not intended to sterilize the workplace. Harmless body contact of an inadvertent non-sexual nature falls outside the broadest parameters of sexual harassment. The mere touching alleged in the aforementioned claims does not constitute sufficiently severe actions as to alter the conditions of plaintiff's employment. *See, e.g., Lamar v. Nynex Service Co.,* 891 F.Supp. 184, 185 (S.D.N.Y.1995) (supervisor's touching of plaintiff's hand while observing that she "looked really hot," combined with vulgar sexual remarks on four other occasions was "too mild and innocuous to constitute sexual harassment as a matter of law"); *Buddle v. Heublein, Inc.,*

613 F.Supp. 491, 492 (S.D.N.Y.1985) (defendant's off-color jokes and touching of plaintiff's knee and shoulder did not constitute sexual harassment, rather it was "only a reflection of his bumptious personality"). The EEOC Guidelines defines "sexual harassment" and the kinds of workplace conduct that may be actionable under Title VII, and tellingly it only specifies physical conduct of a sexual nature. 29 C.F.R. § 1604.11(a) (1997).

Moreover, plaintiff's disdain for the touching appears to originate from a personal animosity toward Ms. Lambert and not a innate sensitivity to interpersonal contact. Plaintiff acknowledged that he wasn't offended in his prior employment when coworkers touched, bumped into, and brushed up against him, JPTO ¶ 88, and that he didn't believe touching a coworker's shoulder or back constituted sexual harassment. JPTO ¶ 89. *See Christoforou v. Ryder Truck Rental, Inc.,* 668 F.Supp. 294, 303 (S.D.N.Y.1987) and cases cited therein (distinguishing between unprofessional behavior and personality conflict on the one hand, and sexual harassment on the other).

The inquiries concerning the color of plaintiff's underwear, although inappropriate, do not constitute abhorrent behavior of an extremely offensive nature. In an era in which the president's "boxers or briefs" personal preference is part of the public discourse, similar questions in the workplace are not outlandish. In addition, the expletives and comments uttered by the parties, which might be considered crude and vulgar when falling on vestal ears, are unfortunately all too commonplace in most current vocations. In the context of a racial slur, the Supreme Court has stated, "mere utterance of an ... epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris,* 510 U.S. at 21, 114 S.Ct. at 370. Gail Lambert reportedly cursed the plaintiff on two occasions and stated that the plaintiff wanted to go to

bed with her. JPTO ¶¶ 78(4), (5). These statements are insufficient to establish a cognizable sexual harassment claim.

■ Furthermore, based on plaintiff's behavior and comparable language, there is a question as to whether Lambert's conduct was truly unwelcome. "The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" *Meritor Savings Bank,* 477 U.S. at 68, 106 S.Ct. at 2406. A complainant's sexually provocative speech or dress is relevant in determining whether he or she found particular sexual advances welcome. *Id.,* 477 U.S. at 69, 106 S.Ct. at 2406.

Plaintiff told Lambert: "See that nurse, I laid her last night," JPTO ¶ 70, and on another occasion stated, "the next thing you know, you will be asking me how big my dick is." JPTO ¶ 73. Moreover, plaintiff whistled at women in the workplace to indicate he was attracted to them, JPTO ¶ 68, and repeatedly kissed and hugged Nury Soto in the Central Supply Department. JPTO ¶ 71. Plaintiff stated he does not believe it is sexual harassment to say "fuck you." JPTO ¶ 69. In fact, plaintiff used identical language when he told a female co-worker to speak "fucking English." JPTO ¶ 55. Plaintiff was in fact warned by Ms. Lambert in December 1993 that the continued us of abusive language would result in discipline. JPTO ¶ 54. Plaintiff received a written warning regarding the abusive language he used on February 15, 1994, which cautioned that any repetition of this behavior would result in further disciplinary action or termination. JPTO ¶ 56.

In addition, the isolated specified incidents do not establish a pervasive hostile work environment. This is not an instance where the plaintiff alleges a continuous course of harassing conduct with only specific recall of a few episodes, rather, the plaintiff alleges a handful of indeterminate encounters with a few explicit events. *Cf. Torres v. Pisano,* 116 F.3d 625, 631 (2d Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct.

563, 139 L.Ed.2d 404 (1997) (allegations of constant harassment without recall of the exact dates and circumstances could constitute pervasive harassment). *See also Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 62 (2d Cir.1992) ("The incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief."); *Legnani v. Alitalia Linee Aeree Italiane,* No. 95–CV–0202, 1997 WL 642556, at *3 (S.D.N.Y. Oct.16, 1997) (four to five instances over a two month period did not establish pervasiveness); *Lamar,* 891 F.Supp. at 185 (five incidents of a sexual nature over the course of approximately seventeen months were too sporadic to constitute sexual harassment as a matter of law).

Although the plaintiff may have subjectively believed he was experiencing a hostile work environment, the Court under Title VII must apply a reasonableness standard, examining whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of employment altered for the worse. *Harris,* 510 U.S. at 21, 114 S.Ct. at 370. Even after drawing all inferences in favor of the plaintiff and viewing the evidence in the light most favorable to the plaintiff, the Court can only conclude, as a matter of law, that the plaintiff has failed to make this threshold showing.

As the plaintiff has failed to establish a prima facie case of hostile workplace discrimination, the Court is not obliged to determine whether the plaintiff has made a showing of a specific basis for imputing the conduct that created the hostile environment to the employer. *See Van Zant,* 80 F.3d at 715. Accordingly, plaintiff's claims pursuant to New York Executive Law § 296 are dismissed.

## III. CONSTRUCTIVE DISCHARGE CLAIM

■ To establish a constructive discharge, a plaintiff must show that the employer "deliberately made [his] working conditions so intolerable that [he] was forced into an involuntary resignation." *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir.1983). A constructive discharge cannot be established through a showing that an employee was dissatisfied with the nature of his assignments, *id.,* 702 F.2d at 325–25, or because his work is being unjustly criticized, *see Clowes v. Allegheny Valley Hosp.,* 991 F.2d 1159, 1160–61 (3d Cir.) *cert denied,* 510 U.S. 964, 114 S.Ct. 441, 126 L.Ed.2d 374 (1993), or where the working conditions, as directly caused by the supervisor, were difficult or unpleasant. *See Martin v. Citibank, N.A.,* 762 F.2d 212, 221 (2d Cir.1985). Rather, the evidence must be "sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Stetson,* 995 F.2d at 361 (quoting *Pena,* 702 F.2d at 325).

■ In the instant action, the events arising during the ten weeks immediately preceding plaintiff's resignation involved the alleged touching incidents of August 25, 1994 and August 30, 1994. (South Nassau 3(g) ¶ 174). In addition, another employee had suggested to the Hospital's laundry supervisor that he accuse the plaintiff of stealing Hospital scrubs, although plaintiff has no evidence that Lambert was in any way involved. (South Nassau 3(g) ¶¶ 174, 175).

The plaintiff had also been given a warning on August 30, 1994, as had other attendants in the Central Supply Department, concerning the use of improper sterilization procedures. (South Nassau 3(g) ¶ 152). Mr. Lucas met with Ms. Lambert and Mark Guarriello, Assistant Director of Personnel, and when Ms. Lambert handed the written warning to the plaintiff, her hand touched his; this constitutes plaintiff's August 30, 1994 touching incident allegation. JPTO ¶¶ 93, 94. After the warning, Lucas met with Guarriello and William Ulrich to discuss his complaints about Ms. Lambert. JPTO ¶ 163. The

plaintiff resigned the next day, prior to any response to his complaint from South Nassau. JPTO ¶ 166.

As there is nothing in the record to indicate that South Nassau, or Gail Lambert deliberately created working conditions that were so arduous or unpleasant that a reasonable person in Lawrence Lucas' position would have felt compelled to resign, plaintiff's constructive discharge claim is dismissed as a matter of law.

## IV. RETALIATORY DISCHARGE CLAIM

The plaintiff has failed to establish that he was constructively discharged, therefore he voluntarily resigned. Accordingly, it is logically incongruous and legally inconsistent to conclude that Lawrence Lucas was discharged in a retaliatory manner, thus plaintiff's retaliatory discharge claim is dismissed.

## V. INTENTIONAL TORT CLAIMS

Plaintiff alleges supplemental state law claims of intentional infliction of emotional distress and assault and battery as against defendant Gail Lambert. Lambert asserts that plaintiff's intentional tort claims should be dismissed on the ground that they are barred under the applicable statute of limitations.

New York's Civil Practice Law and Rules ("CPLR") Section 215(3) imposes a one year statute of limitations for intentional torts. N.Y.Civ.Prac.L. & R. 215(3) (McKinney 1997). Generally, "[a]n action ... must be commenced within the time specified in this article.... No court shall extend the time limited by law for the commencement of an action." CPLR § 201. The one year statute of limitation starts to run when the claim accrues. CPLR 203(a). The claim "accrues when the wrong is done, regardless of when it was discovered, [and] if the wrong is continuing ... each day gives rise to a new cause of action ... [and] each day will also bring a new statute of limitations." McLaughlin, Practice Commentaries,

*McKinney's Cons.Laws of N.Y.,* Book 7B, N.Y.Civ.Prac.L.& R. 203:1 p. 140.

The plaintiff alleges numerous incidents of harassment by the defendant Lambert, occurring throughout his employment. The plaintiff recalls three specific instances in which Ms. Lambert touched him: (1) during a snowstorm, sometime between February and April 1993. JPTO ¶ 90; (2) on August 25, 1994, her hand touched his shoulder for a split second. JPTO ¶ 91; and (3) on August 30, 1994, her hand touched his hand for a split second. JPTO ¶ 93. In addition, plaintiff asserts that on five to seven unidentified occasions Ms. Lambert's hand briefly touched his back or shoulder. JPTO ¶ 108. Plaintiff does not assert that Ms. Lambert ever touched or attempted to touch his private parts. JPTO ¶ 87. The parties stipulate that Ms. Lambert was on leave of absence from June 14, 1994 through August 11, 1994 and that Mr. Lucas was on leave of absence from July 25, 1994 until August 22, 1994. JPTO ¶¶ 167, 168. Therefore, only those acts that occurred between August 22, 1994, until plaintiff's resignation on September 1, 1994, fall within the one year statutory period and will be considered.

### A. Assault and Battery Claims

Under New York law, to recover on a claim of assault, "the plaintiff must show that another person made 'an intentional attempt, displayed by violence or threatening gesture, to do injury to, or commit a battery upon,' his or her person." *Williams v. Port Auth. of New York and New Jersey,* 880 F.Supp. 980, 994 (E.D.N.Y.1995) (quoting 6 N.Y.Jur.2d: Assault—Civil Aspects §§ 1, 3 at 194, 196 (1980)). An assault claim requires allegations that the plaintiff has been put in imminent apprehension of harmful or offensive contact. *Hayes v. Schultz,* 150 A.D.2d 522, 523, 541 N.Y.S.2d 115, 116 (2d Dep't 1989).

A battery, "is a wrongful physical contact with the person of another had by

intention of the wrongdoer and without the consent of the victim." *Williams,* 880 F.Supp. at 994. "To recover damages for battery founded on bodily contact, a plaintiff must prove that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's consent." *Roe v. Barad,* 230 A.D.2d 839, 840, 647 N.Y.S.2d 14, 15 (2d Dep't 1996).

██ The plaintiff has alleged two instances within the one year statutory time period in which the defendant Lambert allegedly touched him. On both occasions, the touching was momentary in duration and innocuous in nature. Every employee must accept the occasional touching or contact that arises in the normal workaday environment. The contact may be more pronounced in crammed working conditions or where the job requires frequent employee movement. In this instance, the plaintiff and defendant were large individuals who worked in a supply department with narrow aisles. Additionally, there is nothing in the record to indicate that Lambert threatened plaintiff with physical harm or that the plaintiff was in fear of such harm. Conversely, plaintiff admits that in anger he threatened Ms. Lambert with physical violence, JPTO ¶ 230, and also stated that he would break Ms. Lambert's hands. JPTO ¶ 229. Accordingly, plaintiff's claims of assault and battery are dismissed and the defendant Lambert's motion for summary judgment is granted as to these claims.

### B. Intentional Infliction of Emotional Distress

██ To succeed in an action under New York law for intentional infliction of emotional distress, a plaintiff must prove: (1) that defendant's conduct was so outrageous and shocking as to exceed all bounds of decency as measured by what the average member of the community would tolerate, (2) that defendant's conduct caused severe mental distress to plaintiff, and (3) that defendant acted with the desire to cause such distress, or acted recklessly and under circumstances that made it certain defendant knew that mental distress would result. *See Williams,* 880 F.Supp. at 995 (citing 61 N.Y.Jur.2d: Fright, Shock, and Mental Disturbance S 8, at 515 (1987)). The inquiry is whether plaintiff's alleged facts constitute conduct so extreme and outrageous in degree and character as to go beyond all possible bounds of decency and which can be regarded as atrocious and utterly intolerable in a civilized community. *See Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993); *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 143–144, 490 N.Y.S.2d 735, 480 N.E.2d 349 (1985).

██ Plaintiff's allegations arising within the applicable time frame fail to even approach atrocious intolerable behavior. Further, there must be intent to cause, or a disregard of a substantial probability of causing, severe emotional distress as well as the existence of severe emotional distress, *see Howell,* 81 N.Y.2d at 121, 596 N.Y.S.2d 350, 612 N.E.2d 699, and there is no evidence profered to support such intent. Accordingly, plaintiff's claim of intentional infliction of emotional distress is dismissed and defendant Lambert's motion for summary judgment as to these claims is granted.

### VI. THE UNEMPLOYMENT INSURANCE DECISION

Plaintiff cites to the decision by Administrative Law Judge Ben Nico dated December 12, 1994, in which plaintiff was granted unemployment insurance and suggests that that decision is binding on this Court as the law of the case.

██ Under the law of the Second Circuit, "the law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *DiLaura v. Power Auth. of State of N.Y.,* 982 F.2d 73, 76 (2d Cir.1992) (quoting *Liona Corp. v. PCH*

*Assocs.*, 949 F.2d 585, 592 (2d Cir.1991) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 2177, 100 L.Ed.2d 811 (1988))). The doctrine of the law of the case "is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Id.* (quoting *Virgin Atl. Airways v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992), *cert. denied*, 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992)).

■■■■ Courts generally depart from the law of the case when there is a change in controlling law, when new evidence becomes available, to correct a clear error, or prevent manifest injustice. *DiLaura*, 982 F.2d at 76. The law of the case doctrine, however, is limited to issues actually determined. *Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). "Questions that have not been decided do not become the law of the case merely because they could have been decided." 18 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 4478 at 789 (1981); *Bonnie & Co. Fashions, Inc., v. Bankers Trust Co.*, 955 F.Supp. 203, 209 (S.D.N.Y. 1997).

■■■■ Whether couched in terms of law of the case or preclusive effect, the law is clear that an unemployment insurance board determination does not dictate the results of a Title VII action.

■■■■ Congress enacted Title VII to assure equal opportunity for employment by eliminating practices that discriminate on the basis of religion, race, color, sex, or national origin. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973). Although there are administrative procedures available to a claimant to raise ancillary employment matters, final responsibility for enforcement of an employment discrimination claim is lodged in the federal courts. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974). A complainant is entitled to a trial de novo in federal court after a final determination by a state administrative agency, *Chandler v. Roudebush*, 425 U.S. 840, 844–45, 96 S.Ct. 1949, 1951–52, 48 L.Ed.2d 416 (1976), even if the agency's determination would have a preclusive effect in state court. *Kremer*, 456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7 (1982). *See also University of Tennessee v. Elliott*, 478 U.S. 788, 796, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986) ("Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims."); *Hill v. Coca Cola Bottling Co. of New York*, 786 F.2d 550, 553 (2d Cir.1986) (holding termination for just cause for unemployment insurance purposes does not negate a subsequent finding of discrimination); *Hernandez v. New York City Law Dep't Corp. Counsel*, No. 94–CV–9042, 1997 WL 27047, at *13 (S.D.N.Y. Jan.23, 1997) (unemployment insurance finding does not collaterally estop plaintiff's retaliatory discharge claim); *Gore v. R.H. Macy & Co., Inc.*, No 86–CV–9684, 1989 WL 65561, at *2 (S.D.N.Y. June 13, 1989) (Administrative Law Judge's finding at unemployment insurance hearing has no preclusive effect on Title VII claim). *See also* N.Y. Labor Law § 623(2) (McKinney's 1988) ("No finding of fact or law contained in a decision rendered pursuant to this article [unemployment insurance] ... shall preclude the litigation of any issue of fact or law in any subsequent action or proceeding"). Accordingly, the plaintiff's unemployment insurance hearing and the resultant decision has no bearing on the Court's determination of this Title VII claim.

## CONCLUSION

For all the foregoing reasons, and as there are no genuine issues as to any material fact, the Court finds for the defendants on all claims and summary judgment is granted. Accordingly, the Clerk of the Court is directed to enter judgment in favor of defendants South Nassau Com-

munities Hospital and Gail Lambert, dismissing all claims of plaintiff Lawrence Lucas in this action. The Clerk of the Court is further directed to close the case.

SO ORDERED.