Karen M. SUSKO, Plaintiff,

v.

**ROMANO'S MACARONI GRILL, Defendant.**

No. 99–CV–7224 (TCP/MLO).

United States District Court,
E.D. New York.

May 8, 2001.

**334**

Richard V. Rappaport, Mitchel Field, NY, for Plaintiff.

David C. Cassidy, Grotta, Glassman & Hoffman, P.A., New York City, for Defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant Romano's Macaroni Grill ("Romano's") moves for partial summary judgment pursuant to Rule 56 of the Federal Rules of Procedure. For the following reasons, the motion is denied.

### BACKGROUND

From July 17, 1996 until May 14, 1997, Plaintiff Karen M. Susko was employed by Romano's as a baker/chef or as a baker/cook at its restaurant in Westbury, New York.

At the commencement of her employment, Susko received an employee orientation handbook which contained the company's sexual harassment policy. The policy provided, among other things, that an employee who believed she was being harassed should, if possible, confront the harasser and inform him to stop. The policy also indicated that the victim should report the incident to her manager, her Area Director, or the Human Resources Representative. Susko testified that she read and was aware of this policy.

Allegedly, in October 1996, Susko, who had recently been involved in a car accident, was retrieving produce from a walk-in refrigerator when Daniel Fabrizio, a fellow chef and co-worker, entered the refrigerator, asked Susko what had happened to her, touched her lower back, and advised her to visit a chiropractor. Susko did not report this incident because she thought Fabrizio was merely attempting to help.

In December 1996, a few days before Christmas, Fabrizio allegedly attempted to kiss and hug Susko, while wishing her a Merry Christmas. The parties dispute whether Fabrizio attempted to kiss Susko on the mouth or on the cheek. Susko did not report this incident to anyone.

In the beginning of March 1997, Fabrizio allegedly squeezed Susko's hip/waste area and patted her behind, when Susko walked past him. Subsequently, Fabrizio allegedly squeezed her side again and threatened to hit her numerous times.

On March 9, 1997, Susko reported these incidents and the October and December incidents to Paul Filiberto, her immediate supervisor who said, "it will be taken care of and not to worry about it any more." (Susko Aff. at ¶ 4.) Regional Chef Antonio Mattina was present when Susko told Filiberto about Fabrizio's actions. Following this complaint, Paul Filiberto and Thomas Coronato, the General Manager, met with Fabrizio and informed him that there had been a complaint made against him involving sexual harassment, that sexual harassment was a terminable offense, and that he could not engage in this kind of conduct again.

On March 15, 1997, Fabrizio again squeezed Susko's side and threatened physical violence. The incident, which was witnessed by a fellow employee, Rhonda Sullivan, was again reported to Paul Filiberto, who allegedly warned Fabrizio about his conduct and told Fabrizio to apologize. Fabrizio allegedly did not apologize. The incident was also reported to the General Manager, Thomas Coronato.

On March 16, 1997, Susko felt someone squeeze her side. Although she did not see Fabrizio touch her, Susko noticed Fabrizio walking away from her after the incident. Allegedly, she immediately reported the incident to Filiberto.

Susko claims that Romano's failed to take action for several days, prompting Susko to report the incidents to her Area Director, Bill Lettier on March 21, 1997. On that same day, Mr. Lettier responded by holding a meeting with Susko, Coronato, and Filiberto. Lettier also interviewed Rhonda Sullivan, the witness, and, later

that day, he fired Fabrizio. On May 14, 1997, Susko was terminated.

On or about December 11, 1997, the plaintiff filed a complaint with the United States Equal Opportunity Commission, alleging that Romano's violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"). She filed this complaint in this Court on November 4, 1999, alleging that Romano's was liable for sexual harassment and retaliation under Title VII. She seeks a declaratory judgment that the defendant has violated Title VII, a permanent injunction directing the defendant to employ her and restraining the defendant from continuing its discriminatory practices, compensatory and/or punitive damages, and attorneys' fees.

The defendant moves only to dismiss the sexual harassment claim, not the retaliation claim.

## DISCUSSION

### A. Summary Judgment Standard

A court will grant a motion for summary judgment if the pleadings, affidavits and admissions show that there is no genuine issue of material fact such that the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant bears the initial burden of demonstrating that the facts adduced fail to establish the existence of an essential element to that party's case. *Id.* at 322–23, 106 S.Ct. 2548. If the movant successfully carries this burden, then the non-moving party must establish that a "rational trier of fact [could] find for the non-moving party [or] that there is a genuine issue for trial." *Historic Pres. Guild of Bay View v. Burnley,* 896 F.2d 985, 993 (6th Cir.1989) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *see also Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). On summary judgment the inferences to be drawn from the underlying facts contained in the moving party's materials must be viewed in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (citation omitted).

## B. Hostile Work Environment Claim

■ The defendant argues that as a matter of law, the plaintiff cannot establish a hostile work environment claim.

■ To establish a hostile work environment claim, a plaintiff must show that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations omitted).

■ Courts must look at the totality of the circumstances when examining whether the hostile actions were sufficiently severe or pervasive as to create a hostile work environment. *See Wahlstrom v. Metro–North Commuter R.R. Co.,* 89 F.Supp.2d 506, 520 (S.D.N.Y.2000) (citing *Brennan v. Metro. Opera Ass'n, Inc.,* 192 F.3d 310, 319 (2d Cir.1999)). Factors to consider include "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a 'mere offensive utterance;' (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." *Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 437 (2d Cir.1999) (citations omitted). When weighing these factors, it must be kept in mind that when the harassing conduct is especially severe, a single episode may establish a hostile work environment. *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768 (2d Cir.1998).

■ The plaintiff must subjectively believe that she works in a hostile environment. The plaintiff must also show that "a reasonable person who is the target of discrimination would find the working conditions so severe or pervasive as to alter the terms and conditions of employment for the worse." *Richardson,* 180 F.3d· at 436.

In this case, the defendant places primary reliance on Judge Seybert's opinion in *Lucas v. South Nassau Communities Hospital,* 54 F.Supp.2d 141 (E.D.N.Y.1998) for the proposition that the activities alleged here are not sufficient to establish a hostile work environment claim. In *Lucas* a male employee claimed, among other things, that his female supervisor created a hostile work environment by brushing against him several times, touching him on several occasions on different locations including his back or shoulder, asking the color of his underwear on two or three occasions, asking if he wanted to go to bed with her on one occasion, and saying "fuck you" on two occasions. *Id.* at 145. Because only two incidents of touching and none of the other allegations fell within the 300 day actionable period and because the court found that there was not a continuing violation, the court granted summary judgment, holding that the plaintiff failed to establish a hostile work environment claim. *Id.* at 147.

*Lucas,* as well as the cases cited by the defendant may be distinguished here where there were several inappropriate sexual gestures and threats of physical violence. According to an affidavit Susko submitted with her papers in opposition to this motion for summary judgment, Fabri-

zio, the alleged harasser, committed the following acts: (1) in October 1996, he allegedly touched her lower back; (2) in December 1996, he attempted to kiss her on the lips and hug her; (3) on March 9, 1997, he patted Susko's behind three times and threatened to hit her numerous times; (4) on March 15, 1997, Fabrizio squeezed Susko's side and again threatened her with physical violence; and (5) on March 16, Fabrizio again squeezed Susko's side.

The defendant argues that under the rule reaffirmed in *Hayes v. New York City Department of Corrections,* 84 F.3d 614 (2d Cir.1996), this Court may not consider the statements made in Susko's affidavit which contradict her deposition testimony. *Id.* at 619–20 (noting that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony," where no issue of fact had existed before the submission). This rule is based on the premise that the utility of summary judgment would be undermined if "a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony." *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572 (2d Cir.1969).

*Hayes* relied on an earlier case, *Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572 (2d Cir.1969). In *Perma* the president of the plaintiff company had given four days of deposition testimony in a fraud case and had testified that he was not aware of a factual basis for imputing fraud to the defendant. *Id.* at 577. In an affidavit submitted for the purpose of defeating summary judgment, the president alleged facts which imputed fraud to the defendant. *Id.* at 577–78. The Second Circuit held that the affidavit could not be used to raise an issue of material fact because no issue of fact had existed before the submission of the affidavit. *See id. Hayes* distinguished *Perma,* noting that when only a limited quantity of deposition testimony was available and other material submitted to oppose summary judgment was only arguably contradictory, the other material could be examined for summary judgment purposes. *See Hayes,* 84 F.3d at 619–20.

In this case, Susko's affidavit is not used to create a factual dispute where no issue of fact previously existed. It merely clarifies the deposition testimony, which appears to be incomplete from the excerpts that have been submitted to this Court. As Susko was not deposed for four days like the plaintiff president in *Perma,* defense counsel may not have elicited in sufficient detail the nature and time frame of Fabrizio's acts. It is also not apparent that the affidavit is contradictory because several sections of Ms. Susko's deposition testimony have been excluded from the moving papers on file. Accordingly, a rejection of the affidavit would amount to being an improper inquiry into Ms. Susko's credibility. *See Hayes,* 84 F.3d at 619.

However, even if only the deposition testimony (a complete copy of which neither party has provided) and the 56.1 statements are analyzed, the plaintiff provides a sufficient factual basis to establish a hostile work environment claim. Susko alleges that (1) in October 1996, Fabrizio touched her in the refrigerator (Pintsov Certification Ex. A at 145); (2) in December 1996, Fabrizio attempted to kiss and hug her (*Id.* at 149); (3) at some point in March 1997, Fabrizio squeezed her side, patted her on the behind, and threatened her (Def.'s 56.1 Statement ¶ 18; Pl.'s 56.1 Statement ¶ 6); Fabrizio subsequently placed his hand on her side (Def.'s 56.1 Statement at ¶ 19). In light of the threat of physical violence, the number of offen-

sive gestures, and the small time frame in which these incidents occurred, it cannot be said as a matter of law that a reasonable person in Susko's position would not have found this to be a hostile work environment. Moreover, by raising her objections to Fabrizio's behavior to her supervisor more than once, Susko indicated that she subjectively felt that the work environment was hostile.

The defendant also argues that Fabrizio's threat to slap her on one occasion is immaterial because Susko admitted that she did not understand the threat to be sexual in nature. However, in light of the alleged sexual gestures made by the defendant and the charged sexual environment these gestures would have created, the threat of physical violence is material to a subjective and objective determination of whether a hostile work environment existed. Accordingly, the motion should be denied.

## C. Imputing the Alleged Harassment to Macaroni Grill

 Even if a plaintiff establishes a hostile work environment claim, to recover against the employer, the plaintiff must establish a basis to impute the harassing conduct to the employer. *Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995). To impute liability to an employer in situations where the alleged harasser is a co-worker rather than a person in a supervisory position, the plaintiff must show that the employer "has 'either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Id.* at 249 (quoting *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 63 (2d Cir.1992)). The plaintiff may establish that the employer knew of the harassment by showing either actual or constructive knowledge. *See*

*Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63–64 (2d Cir.1998).

 The issue here is not whether the defendant provided a reasonable avenue for complaint, which it clearly did in light of its established sexual harassment policy which had been given to the plaintiff, but whether the defendant took appropriate steps to stop the harassing conduct. An employer who has knowledge of a hostile work environment must take reasonable steps to remedy the harassment. *Id.* at 65. The reasonableness of the company's response must be analyzed in light of the totality of the circumstances. *Id.* The Second Circuit has indicated that the factors to be considered in determining the reasonableness of the response include "the gravity of the harm being inflicted upon the plaintiff, the nature of the employer's response in light of the employer's resources, and the nature of the work environment." *Id.*

The defendant argues that this case "is on all fours" with *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708 (2d Cir.1996), in which the Second Circuit addressed the issue of reasonableness of an employer's response. The Second Circuit found that an employer's reaction to a complaint of harassment was sufficient under the following circumstances. On the same day that a female employee complained to management that a co-worker exposed himself in front of her, the company commenced an investigation. *Id.* at 715. Within thirty-six hours of the complaint, the alleged harasser, the victim, and a witness picked by the victim were interviewed by management. *Id.* Additionally, within four days of the complaint, the harasser had been reprimanded and instructed in writing to limit his contact with the victim. *Id.* Finally, within ten days of the complaint the harasser was fired, after the employer learned that the harasser had

lied on his application about his criminal record. *Id.*

Admittedly, Susko's case is a close call. As alleged in the plaintiff's affidavit, on March 9, 1997, Fabrizio allegedly patted Susko three times on the behind and threatened her. On that same day, Susko reported the incident and Fabrizio's conduct in October and December of 1997 to Filiberto, her supervisor. It appears that later that day, Filiberto met with Coronato, the General Manager, and Fabrizio. At this meeting, Filiberto informed Fabrizio that another employee had complained about his conduct and that sexual harassment was a terminable offense. On March 15, 1997, Fabrizio again allegedly squeezed Susko's side and threatened her with violence. Susko maintains that she informed Filiberto about the incident. On March 16, 1997, Fabrizio again squeezed Susko's side, and Susko reported the activity to Filiberto. On March 21, 1997, Susko reported the harassment to Bill Lettier, the Area Director, because she felt that nothing was being done to remedy the problem. Lettier held a meeting that same day with Susko, Filiberto, Coronato, and Rhonda Sullivan, the witness. Later that day, Fabrizio was terminated.

Romano's apparently responded to Susko's complaints by warning Fabrizio about his conduct after Susko's first complaint and by firing Fabrizio within a mere eleven days after the first complaint. This case is similar therefore similar to *Van Zant* where the harasser was terminated ten days after the alleged incident. However, this case differs from *Van Zant* in that the charges alleged against Fabrizio are more grave. Although Van Zant thought the harassment was serious enough to file a police complaint, she did not allege that the harasser threatened her with physical violence. In this case, however, Susko alleges that Fabrizio threat-

ened her. Accordingly, there is a fact issue as to whether the company acted reasonably under these circumstances, and the motion is denied.

### CONCLUSION

Because of the number of offensive contacts Fabrizio had with Susko, the short time frame in which these actions occurred, and the alleged threats of physical violence made by Fabrizio, the plaintiff provides sufficient factual support to establish a hostile work environment claim. Additionally, because the plaintiff was physically threatened by Fabrizio, there is a fact issue as to whether Romano's acted reasonably in response to her complaint. Accordingly, this motion for partial summary judgment is denied.

SO ORDERED.