OPINION OF THE COURT
Chief Judge Kaye.
This appeal, involving a newspaper’s publication of plain *118 tiff’s photograph without her consent, calls upon us to consider the relationship between two separate but potentially overlapping torts: intentional infliction of emotional distress, and invasion of the right to privacy.[1]
In early September 1988, plaintiff Pamela J. Howell was a patient at Four Winds Hospital, a private psychiatric facility in Westchester County. Her complaint and affidavit (accepted as true on this appeal) allege that it was imperative to her recovery that the hospitalization remain a secret from all but her immediate family.
Hedda Nussbaum was also at that time a patient at Four Winds. Nussbaum was the "adoptive” mother of six-year-old Lisa Steinberg, whose November 1987 death from child abuse generated intense public interest (see, e.g., Matter of New York Times v Rothwax, 143 AD2d 592 [vacating Trial Judge’s order barring counsel from discussing case with news media]; see also, People v Steinberg, 79 NY2d 673).
On September 1, 1988, a New York Post photographer trespassed onto Four Winds’ secluded grounds and, with a telephoto lens, took outdoor pictures of a group that included Nussbaum and plaintiff. That night, the hospital’s medical director telephoned a Post editor requesting that the paper not publish any patient photographs. Nevertheless, on the front page of next days’ edition two photographs appeared— one of Nussbaum taken in November 1987, shortly after her arrest in connection with Lisa’s death, and another of Nussbaum walking with plaintiff, taken the previous day at Four Winds.
In the earlier photograph, Nussbaum’s face is bruised and disfigured, her lips split and swollen, and her matted hair is covered with a scarf. By contrast, in the photograph taken at Four Winds, Nussbaum’s facial wounds have visibly healed, her hair is coiffed, and she is neatly dressed in jeans, a sweater and earrings. Plaintiff, walking alongside her, smiling, is in tennis attire and sneakers. The caption reads: "The battered face above belongs to the Hedda Nussbaum people remember — the former live-in lover of accused child-killer, *119 Joel Steinberg. The serene woman in jeans at left is the same Hedda, strolling with a companion in the grounds of the upstate psychiatric center where her face and mind are healing from the terrible wounds Steinberg inflicted.”
The accompanying article centers on Nussbaum’s physical and mental rehabilitation and quotes her as saying: "I feel good. I’m healthy * * * They’re good to me here. The People are nice and I do my photography.” The article concludes by noting that several issues still haunt Nussbaum, including whether she should cooperate with the prosecution and testify against Steinberg.
Although plaintiff’s name was not mentioned in the caption or article, her face is readily discernible. Alleging she experienced emotional distress and humiliation, plaintiff commenced an action against the Post, the photographer and two writers, seeking multimillion dollar damages for alleged violations of Civil Rights Law §§ 50 and 51, intentional and negligent infliction of emotional distress, trespass, harassment and prima facie tort. Plaintiff’s husband, by the same complaint, brought a derivative claim for loss of consortium.
Supreme Court granted in part defendants’ CPLR 3211 (a) (7) motion by dismissing all causes of action except for intentional infliction of emotional distress and the derivative claim, and denied plaintiff’s motion for summary judgment.[2] On the parties’ cross appeals, the Appellate Division modified by dismissing the entire complaint. This Court granted plaintiff’s motion for leave to appeal to consider the dismissal of her claims for violation of the right to privacy and intentional infliction of emotional distress. We now affirm.
The Legal Backdrop
This appeal brings together two separate bodies of tort law, each with a long history that is relevant to resolution of the issues before us.
Intentional Infliction of Emotional Distress
Historically, the common law of this State did not recognize emotional injury — even with physical manifestations — as an independent basis for recovery. In Mitchell v Rochester Ry. Co. (151 NY 107 [1896]), for example, a pregnant woman nearly *120 hit by defendant’s horses suffered a miscarriage. The Court noted that since there was no cause of action for fright, "it is obvious that no recovery can be had for injuries resulting therefrom. That the result may be nervous disease, blindness, insanity, or even a miscarriage, in no way changes the principle.” (151 NY, at 109-110.) The Court expressed two concerns, present even today, with permitting emotional distress damages: (i) the potential "flood of litigation,” and (ii) the ease with which emotional injury "may be * * * feigned without detection” (id., at 110).
Nevertheless, emotional distress damages as an adjunct, or "parasitic,” to recognized torts were allowed (see, e.g., Garrison v Sun Print. & Publ. Assn., 207 NY 1, 8 [1912] [defamation]). Indeed, courts often struggled to find an established cause of action upon which to base an award of emotional distress damages to a deserving plaintiff. This is exemplified by a line of cases allowing victims of unacceptable behavior to recover under a breach of contract theory (see, e.g., Boyce v Greeley Sq. Hotel Co., 228 NY 106; Aaron v Ward, 203 NY 351; de Wolf v Ford, 193 NY 397).
The Restatement of Torts, first adopted in 1934, generally insulated an actor from liability for causing solely emotional distress: "conduct which is intended or which though not so intended is likely to cause only a mental or emotional disturbance to another does not subject the actor to liability * * * for emotional distress resulting therefrom” (Restatement of Torts § 46 [a]). Shortly thereafter, in an influential article surveying the field — including the New York cases — Calvert Magruder concluded that courts were already giving extensive protection to feelings and emotions, showing an "adaptability of technique” in redressing the more serious invasions (Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv L Rev 1033, 1067 [1936]).
Building on the Magruder article, Professor Prosser argued that, without expressly saying so, courts had actually created a new tort consisting of the intentional, outrageous infliction of mental suffering in an extreme form (Prosser, Intentional Infliction of Mental Suffering: A New Tort, 37 Mich L Rev 874, 874 [1939]). "Out of the array of technical assaults, batteries, imprisonments, trespasses, 'implied contracts,’ invasions of 'privacy’ or of doubtful 'property rights,’ the real interest which is being protected stands forth very clearly.” (Id., at 886-887.) Prosser suggested that there was no longer a reason *121 or necessity for resorting to such "subterfuges,” and that it was "high time to abandon them, and to rest the action upon its real ground.” (Id., at 881.)
Responding to these and similar importunings,[3] the Restatement in 1948 abandoned its earlier position and declared that "[o]ne who, without a privilege to do so, intentionally causes severe emotional distress to another is liable * * * for such emotional distress” (Restatement of Torts § 46 [a] [1948 Supp]).
While working on the Second Restatement of Torts, its Reporter, Dean Prosser, noted that the 1948 version was so broad as to suggest the need for further limitation (Prosser, Insult and Outrage, 44 Cal L Rev 40, 41 [1956]). The requirement of "extreme and outrageous conduct” was the apparent solution. As the Second Restatement reads: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress” (Restatement [Second] of Torts §46 [1] [1965]). This Court subsequently adopted the Restatement formulation (see, Fischer v Maloney, 43 NY2d 553, 557; Murphy v American Home Prods. Corp., 58 NY2d 293, 303; Freihofer v Hearst Corp., 65 NY2d 135, 143).
The tort has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. The first element — outrageous conduct— serves the dual function of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiff’s claim of severe emotional distress is genuine (see, Prosser, Insult and Outrage, 44 Cal L Rev, at 44-45; compare, Mitchell v Rochester Ry Co., 151 NY, at 110). In practice, courts have tended to focus on the outrageousness element, the one most susceptible to determination as a matter of law (see, Restatement [Second] of Torts § 46, comment h; Givelber, The Right to Minimum Social Decency and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct ["Social Decency”], 82 Colum L Rev 42, 42-43 [1982]).
*122 Unlike other intentional torts, intentional infliction of emotional distress does not proscribe specific conduct (compare, e.g., Restatement [Second] of Torts § 18 [battery]; id., § 35 [false imprisonment]), but imposes liability based on after-the-fact judgments about the actor’s behavior. Accordingly, the broadly defined standard of liability is both a virtue and a vice. The tort is as limitless as the human capacity for cruelty. The price for this flexibility in redressing utterly reprehensible behavior, however, is a tort that, by its terms, may overlap other areas of the law, with potential liability for conduct that is otherwise lawful. Moreover, unlike other torts, the actor may not have notice of the precise conduct proscribed (see, Givelber, Social Decency, 82 Colum L Rev, at 51-52).
Consequently, the "requirements of the rule are rigorous, and difficult to satisfy” (Prosser and Keeton, Torts § 12, at GO-61 [5th ed]; see also, Murphy, 58 NY2d, at 303 [describing the standard as "strict”]). Indeed, of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous (see, Freihofer v Hearst Corp., 65 NY2d, at 143-144; Burlew v American Mut. Ins. Co., 63 NY2d 412, 417-418; Murphy, 58 NY2d, at 303; Fischer v Maloney, 43 NY2d, at 557). " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community’ ” (Murphy, 58 NY2d, at 303, quoting Restatement [Second] of Torts § 46, comment d).
The Right to Privacy
While legal scholarship has been influential in the development of a tort for intentional infliction of emotional distress, it has had less success in the development of a right to privacy in this State. In a famous law review article written more than a century ago, Samuel Warren and Louis Brandéis advocated a tort for invasion of the right to privacy (Warren and Brandeis, The Right to Privacy, 4 Harv L Rev 193 [1890]). Relying in part on this article, Abigail Marie Roberson sued a flour company for using her picture, without consent, in the advertisement of its product (Roberson v Rochester Folding Box Co., 171 NY 538). Finding a lack of support for the thesis of the Warren-Brandeis study, this Court, in a four to three decision, rejected plaintiffs claim.
The Roberson decision was roundly criticized (see, Saveli, *123 Right of Privacy-Appropriation of a Person’s Name, Portrait, or Picture For Advertising or Trade Purposes Without Prior Written Consent: History and Scope in New York ["Right of Privacy-Appropriation”], 48 Alb L Rev 1, 11-12 [collecting articles]). The Legislature responded by enacting the Nation’s first statutory right to privacy (L 1903, ch 132), now codified as sections 50 and 51 of the Civil Rights Law. Section 50 prohibits the use of a living person’s name, portrait or picture for "advertising” or "trade” purposes without prior written consent (Civil Rights Law §50). Section 50 provides criminal penalties and section 51 a private right of action for damages and injunctive relief.
Although the statute itself does not define the terms "advertising” or "trade” purposes, courts have consistently held that the statute should not be construed to apply to publications concerning newsworthy events or matters of public interest (Finger v Omni Publs. Intl., 77 NY2d 138, 141-142; Stephano v News Group Publs., 64 NY2d 174, 184). This is both a matter of legislative intent and a reflection of constitutional values in the area of free speech and free press (Stephano, 64 NY2d, at 184; Arrington v New York Times Co., 55 NY2d 433, 440). Thus, a " 'picture illustrating an article on a matter of public interest is not considered used for the purpose of trade or advertising within the prohibition of the statute * * * unless it has no real relationship to the article * * * or unless the article is an advertisement in disguise’ ” (Murray v New York Mag. Co., 27 NY2d 406, 409, quoting Dallesandro v Holt & Co., 4 AD2d 470, 471, appeal dismissed 7 NY2d 735; see also, Finger, 77 NY2d, at 142; Stephano, 64 NY2d, at 185; Arrington, 55 NY2d, at 440).
At least three other "privacy” torts have been recognized elsewhere (see, Prosser, Privacy, 48 Cal L Rev 383; Restatement [Second] of Torts §§ 652A-652E): unreasonable publicity given to another’s private life (Restatement [Second] of Torts § 652D); unreasonable intrusion upon seclusion (id., § 652B); and publicity that unreasonably places another in a false light (id., § 652E). While the courts of other jurisdictions have adopted some or all of these torts, in this State the right to privacy is governed exclusively by sections 50 and 51 of the Civil Rights Law; we have no common law of privacy (Stephano, 64 NY2d, at 182; Arrington, 55 NY2d, at 439-440; Cohen v Hallmark Cards, 45 NY2d 493, 497, n 2; Flores v Mosler Safe Co., 7 NY2d 276, 280). Balancing the competing policy concerns underlying tort recovery for invasion of pri *124 vacy is best left to the Legislature, which in fact has rejected proposed bills to expand New York law to cover all four categories of privacy protection (see, Arrington, 55 NY2d, at 440; Savell, Right of Privacy-Appropriation, 48 Alb L Rev, at 3, n 4).
Application of the Law to the Present Appeal
The core of plaintiff’s grievance is that, by publishing her photograph, defendants revealed to her friends, family and business associates that she was undergoing psychiatric treatment — a personal fact she took pains to keep confidential. There is, of course, no cause of action in this State for publication of truthful but embarrassing facts. Thus, a claim grounded in the right to privacy must fall within Civil Rights Law §§ 50 and 51.
The statutory right to privacy is not transgressed unless defendants used plaintiff’s photograph in connection with trade or advertising. Accordingly, if plaintiff’s picture accompanied a newspaper article on a matter of public interest, to succeed she must demonstrate that the picture bore no real relationship to the article, or that the article was an advertisement in disguise (see, Stephano, 64 NY2d, at 185; Arrington, 55 NY2d, at 440; Murray v New York Mag. Co., 27 NY2d, at 409). Plaintiff concedes that, in the aftermath of Lisa Steinberg’s death, articles about Hedda Nussbaum were a matter of public interest. Additionally, the Post article plainly was not a veiled advertisement. Thus, analysis of the civil rights claim centers on the "no real relationship” requirement.
We have been reluctant to intrude upon reasonable editorial judgments in determining whether there is a real relationship between an article and photograph (Finger, 77 NY2d, at 143; see also, Gaeta v New York News, 62 NY2d 340, 349). In Finger, for example, a magazine without consent used a photograph of plaintiffs and their six children to illustrate a segment about caffeine-enhanced fertility. Although none of the children had been conceived in the manner suggested by the article, we concluded that the requisite nexus between the article and photograph was established because the article’s theme — having a large family — was fairly reflected in the picture (see, Finger, 77 NY2d, at 142-143).
In the present case, similarly, plaintiff has failed to meet her burden. The subject of the article was Hedda Nussbaum’s *125 physical and emotional recovery from the beatings allegedly inflicted by Joel Steinberg. The photograph of a visibly healed Nussbaum, interacting with her smiling, fashionably clad "companion” offers a stark contrast to the adjacent photograph of Nussbaum’s disfigured face. The visual impact would not have been the same had the Post cropped plaintiff out of the photograph, as she suggests was required. Thus, there is a real relationship between the article and the photograph of plaintiff, and the civil rights cause of action was properly dismissed.
Defendants would have our analysis end here — without considering whether plaintiff has stated a cause of action for intentional infliction of emotional distress — arguing that the tort may not be used as an end run around a failed right to privacy claim. Insofar as plaintiff’s claim is based on the publication of her photograph, we agree, for the publication was qualifiedly privileged — meaning that defendants acted within their legal right — and no circumstances are present that would defeat the privilege.
The distinction between privileged and nonprivileged conduct as it relates to infliction of emotional distress is implicit in our cases and explicit in the Restatement. In Murphy v American Home Prods. Corp. (58 NY2d, at 303), an employment case, we held that plaintiff could not "subvert the traditional at-will contract rule by casting his cause of action in terms of a tort of intentional infliction of emotional distress.” If an employer has the right to discharge an employee, the exercise of that right cannot lead to a claim for infliction of emotional distress, however distressing the discharge may be to the employee. In the course of discharging the employee, however, an employer’s deliberate reprehensible conduct intentionally or recklessly causing severe emotional distress is not within the employer’s right, and may support a claim for intentional infliction of emotional distress.
The 1948 Restatement expressly provided that privileged conduct could not be the basis for liability (Restatement of Torts §46 [1948 Supp]), and the comments to the current version signify an intent to continue the privileged-conduct exception: "The conduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where [the actor] has done no more than to insist upon his [or her] legal rights in a permissible way, even though he [or she] is well *126 aware that such insistence is certain to cause emotional distress.” (Restatement [Second] of Torts § 46, comment g.)
A newspaper’s publication of a newsworthy photograph is an act within the contemplation of the "privileged-conduct” exception (compare, Hustler Mag. v Falwell, 485 US 46, 56). Thus, even if defendants were aware that publication would cause plaintiff emotional distress (see, Restatement [Second] of Torts § 46, comment f), publication — without more — could not ordinarily lead to liability for intentional infliction of emotional distress. We do not mean to suggest, however, that a plaintiff could never defeat the privilege and state a claim for intentional infliction of emotional distress. But because plaintiffs allegations offer no basis for concluding that the privilege has been abused, we need not explore today what circumstances might overcome the privilege.
That does not conclude our analysis, for plaintiff additionally complains that the manner in which her photograph was obtained constituted extreme and outrageous conduct contemplated by the tort of intentional infliction of emotional distress.
Courts have recognized that newsgathering methods may be tortious (see, e.g., Galella v Onassis, 487 F2d 986, 995 [2d Cir]) and, to the extent that a journalist engages in such atrocious, indecent and utterly despicable conduct as to meet the rigorous requirements of an intentional infliction of emotional distress claim, recovery may be available. The conduct alleged here, however — a trespass onto Four Winds’ grounds— does not remotely approach the required standard. That plaintiff was photographed outdoors and from a distance diminishes her claim even further.
Accordingly, the order of the Appellate Division, insofar as it pertains to the individual defendants, should be affirmed, with costs.
Judges Simons, Titone, Hancock, Jr., and Bellacosa concur; Judge Smith taking no part.
Order, insofar as it pertains to the individual defendants, affirmed, with costs.

. Subsequent to oral argument, the New York Post filed a chapter 11 bankruptcy petition, which operates as an automatic stay of this proceeding (11 USC § 362 [a] [1]). That stay, however, does not apply to the individual defendants in the circumstances presented. Accordingly, the appeal with respect to the Post is stayed, and this opinion applies only to the individual defendants.

. Plaintiff does not contest the dismissal of her causes of action for trespass, harassment, prima facie tort and negligent infliction of emotional distress.

. See, e.g., Harper and McNeely, A Re-examination of the Basis for Liability for Emotional Distress, 1938 Wis L Rev 426; Void, Tort Recovery for Intentional Infliction of Emotional Distress, 18 Neb L Bull 222 (1939); Borda, One’s Right to Enjoy Mental Peace and Tranquility, 28 Geo U 55 (1939); Seitz, Insults-Practical Jokes-Threats of Future Harm — How New as Torts?, 28 Ky LJ 411 (1940).