*973 OPINION OF THE COURT
Sandra L. Sgroi, J.
Ordered that this motion to reargue is granted and upon re-argument the defendants’ motion for leave to amend the answer to add four counterclaims is denied.
On December 15, 2005, a motion by the defendants for leave to amend their answer to add counterclaims was granted without opposition by this court. The parties attempted to adjourn the motion by stipulation to allow the plaintiff to submit opposition to the motion but the stipulation was not properly or timely processed by court personnel and therefore the motion was not adjourned. Since it was not adjourned, it was granted without opposition. The parties have stipulated to resubmit the motion to the court and to permit the motion to be reargued on the same papers previously prepared and submitted by the parties. The court will grant the motion to reargue and will consider the motion to amend and the opposition,, on its merits.
The defendants seek to amend their answer to include counterclaims against the plaintiff, American Credit Card Processing Corp., and George Miller, individually, for damages pursuant to the federal Fair Debt Collection Practices Act (hereinafter FDCPA [15 USC § 1692 et seq.]). According to the attorney for the defendants, this motion for leave to serve an amended answer and to add a party seeks to include counterclaims for damages pursuant to FDCPA §§ 807 and 813 (15 USC §§ 1692e, 1692k) and counterclaims for the intentional infliction of emotional harm caused by alleged false, deceptive and misleading statements made by George Miller to the defendant John Fairchild. It is alleged that Miller threatened that nonpayment of the debt sued on herein by the plaintiff would result in the arrest of the defendants and that this allegation was made with knowledge that the defendant’s wife was sick.
In the complaint, the plaintiff, a credit card processing company, alleges that the defendants, who are doing business as a stereo and video store, must pay the plaintiff for credit card charge-backs resulting from fraudulent overseas transactions in the amount of over $80,000. The defendants entered into a contract with the plaintiff American Credit Card Processing Corp. whereby the defendants agreed to process charges from legitimate credit card customers. George Miller was the salesman who sold the contract to the defendant and he is an independent contractor who works for the plaintiff. The contract be *974 tween the plaintiff and the defendants permits charge-backs to be assessed against the defendants if the reimbursed credit card charges submitted by the defendants are ultimately found to be unauthorized or fraudulent.
According to the plaintiff, the defendants accepted charges from foreign customers that were fraudulent and the plaintiff paid the defendants for those charges before becoming aware that the charges were fraudulent. When the plaintiff became aware that the charges were fraudulent, the defendants were contacted. When the defendants were contacted, they refused to pay the charge-backs. American then notified the independent sales agent who was responsible for recruiting the defendants as a customer for the plaintiff, who, without any instruction from the plaintiff, called the defendants in an attempt to resolve the issue of payment. In Miller’s affidavit, he states that “some of the products he [the defendant] allegedly shipped out to the alleged purchasers and for which he was paid by American, were actually returned to him and he resold them pocketing all of the money. [Thus he was paid twice.]” (Affidavit of George Miller, Dec. 5, 2005.) George Miller, in his deposition, stated that before the improper charges were posted in late 2004, the defendant John Fairchild had always called him when a large credit card purchase was made to make sure that the risk department of the plaintiff would not hold money that would be due the defendants if the charges were not fraudulent. John Fairchild did not call when the charges that are the subject of this lawsuit were submitted for payment.
George Miller was deposed on August 29, 2005 and at that deposition he admitted that in an attempt to collect a debt he made the following statements to John Fairchild:
“They are going to have you arrested. You have taken fraudulent credit cards. You better pay the ninety K.”
“The secret service is going to arrest you. It’s a matter of time. You knew these were fraudulent credit cards.”
“You will lose your house.”
“I hope they take everything away from you. They are all over my ass, so you better take care of this.”
“They are going to bury you, John, you lying bastard.”
Miller stated at his deposition that the plaintiff American Credit Card Processing Corp. was involved with the charge-backs against John Fairchild’s business, that he was told about this problem by the agents of American Credit Card *975 Processing Corp., and that he was not told to take any action by them. Miller further stated that he did not know what was going to happen with regard to his employment by American Credit Card Processing Corp. as a result of the large, uncollected debt owed to the plaintiff by the defendants and that he was concerned that the uncollected monies would adversely affect his employment. (Deposition of George Miller, exhibit C.)
In opposition to the motion to amend the answer and add four counterclaims, the plaintiff alleges that the FDCPA protects only consumers from unlawful debt collection practices and only applies to consumer debts created primarily for personal, family and household purposes and not to business debts (see, Annotation, What Constitutes “Debt” for Purposes of Fair Debt Collection Practices Act [15 U.S.C.A. § 1692a(5)], 159 ALR Fed 121).
The FDCPA (15 USC § 1692 et seq.) provides a remedy for consumers who are subjected to abusive, deceptive, and unfair debt collection practices by debt collectors (id.). The term “debt” as used in that act is construed broadly to include any obligation to pay monies arising out of a consumer transaction (see, Gary v Goldman & Co., 180 F Supp 2d 668 [2002]) and the type of consumer transaction giving rise to a debt has been described as one involving the offer or extension of credit to a consumer for personal, family and household expenses (see, Gary v Goldman & Co., 180 F Supp 2d 668 [2002]).
Since actions involving a commercial debt are not covered by the protective provisions of the FDCPA, and the debt sought to be collected by the plaintiff in this action is a business or commercial debt, there is no valid cause of action that can be pleaded under the FDCPA by the defendants as against either the plaintiff or the proposed additional party, George Miller (see, Beaton v Reynolds, Ridings, Vogt & Morgan, P.L.L.C., 986 F Supp 1360 [1998]). There has been no showing or allegation by the defendants that their commercial debt was transformed into a consumer debt by the actions of a debt collector (id.).
Additionally, under the FDCPA a creditor who is collecting his own debts is not considered to be a debt collector except in unusual circumstances not alleged to be present here (see, Annotation, What Constitutes “Debt Collector” for Purposes of Fair Debt Collection Practices Act [15 U.S.C.A. § 1692a(6)], 173 ALR Fed 223; Maguire v Citicorp Retail Servs., Inc., 147 F3d 232 [1998]). In Maguire v Citicorp Retail Servs. (supra), it is stated:
“As a general matter, creditors are not subject to the FDCPA. However, a creditor becomes subject to *976 the FDCPA if the creditor ‘in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.’ 15 U.S.C. § 1692a(6). A creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, ‘pretends to be someone else’ or ‘uses a pseudonym or alias.’ Villarreal v Snow, 1996 WL 473386 at *3 (N.D.Ill. Aug. 19, 1996)” (id. at 235).
The court need not reach the issue of whether George Miller, an alleged independent contractor* of the plaintiff, could be considered an independent debt collector of the plaintiff because the debt was a business debt and not a consumer debt. However, it does not appear from this record that Miller could be considered a “debt collector” as defined by the FDCPA because he was not hired or told by the plaintiff to call the defendants to attempt to collect the debt (see generally, Annotation, What Constitutes “Debt Collector ” for Purposes of Fair Debt Collection Practices Act [15 U.S.C.A. § 1692a(6)], 173 ALR Fed 223). Miller used his own name and he was known to the defendant John Fairchild.
Generally, motions for leave to amend an answer or other pleadings are freely granted absent prejudice except when the proposed amendment is clearly without merit (see, CPLR 3025). The court will not examine the merits of the proposed amendment “unless the insufficiency or lack of merit is clear and free from doubt. In cases where the proposed amendment is palpably insufficient as a matter of law or is totally devoid of merit, leave should be denied” (Norman v Ferrara, 107 AD2d 739, 740 [1985] [citations omitted]; see, Nissenbaum v Ferazzoli, 171 AD2d 654 [1991]).
Here, the proposed amendment of the answer to add causes of action under the FDCPA is without merit because the debt sought to be collected is not a consumer debt and the debtors are involved in a commercial enterprise. Therefore, the motion to amend to add the first and second proposed counterclaims is denied.
The proposed third and fourth causes of action seek to add claims for intentional infliction of severe emotional distress *977 against both the proposed additional defendant George Miller and the plaintiff American Credit Card Processing Corp. In order to support a claim for intentional infliction of emotional distress in New York, the conduct of the actor must be so extreme and outrageous as to exceed all bounds of decency or to be utterly intolerable in civilized society (see, Burlew v American Mut. Ins. Co., 63 NY2d 412 [1984]; Fischer v Maloney, 43 NY2d 553, 557 [1978]).
The elements of a claim for intentional infliction of emotional distress under New York law are extreme and outrageous conduct; intent to cause, or disregard of a substantial probability of causing, severe emotional distress; a causal connection between the conduct and injury; and severe emotional distress. (See, Howell v New York Post Co., 81 NY2d 115 [1993].)
The first element of a claim for intentional infliction of emotional distress, outrageous conduct, serves the functions of filtering out petty and trivial complaints that should not result in civil litigation and of assuring that the claim of severe emotional distress is real and not contrived simply for the purposes of supporting the litigation (id.).
In the present dispute before this court, the central issue regarding the intentional infliction of emotional distress claim is whether the facts as alleged in the proposed amended pleading amount to “outrageous conduct” under the above test as interpreted by the New York courts.
The New York Court of Appeals and the appellate courts of this State have taken a restrictive view with respect to the conduct necessary for this tort (see, Murphy v American Home Prods. Corp., 58 NY2d 293 [1983]). In Murphy v American Home Prods. Corp. (supra) the Court of Appeals stated that “[liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” (Id. at 303.) More recently in Howell v New York Post Co. (supra) the Court of Appeals stated that “the requirements of the rule are rigorous, and difficult to satisfy. Indeed, of the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous.” (Howell at 122 [internal quotation marks and citations omitted].)
The New York Court of Appeals has affirmed the dismissal of claims attempting to plead the tort of intentional infliction of *978 emotional distress in cases presenting allegations more severe or similarly abusive as those found in the instant fact pattern involved in this case. In Burlew v American Mut. Ins. Co. (63 NY2d 412 [1984]), the plaintiff, who had suffered a serious injury, on the job, alleged that her employer intentionally waited a number of months before authorizing her surgery and that this action constituted intentional infliction of emotional distress. When the defendant employer moved to dismiss the complaint, the plaintiff submitted an affidavit adding additional facts and alleged that one of the defendant’s agents had yelled at her: “You’re crazy if you think we’re going to support you for the rest of your life” (id. at 415). The Court of Appeals stated that these facts did “not describe any conduct remotely approaching the standard of behavior necessary to establish such a claim” (id. at 417).
In Murphy v American Home Prods. Corp. (supra), the plaintiff alleged that he had been fired because he had disclosed to the top management of the defendant improprieties on the part of others and because of his age. He asserted that the “top financial officer told him on various occasions that he wished he could fire plaintiff but that, because to do so would be illegal due to plaintiffs age, he would make sure by confining him to routine work that plaintiff did not advance in the company” (id. at 298). The Court of Appeals concluded that the facts alleged by plaintiff concerning his termination “fall far short” of the strict standard for intentional infliction of emotional distress (id. at 303).
In yet additional examples on how difficult it is to sustain a cause of action for intentional infliction of emotional harm, the Appellate Division in Seltzer v Bayer (272 AD2d 263 [2000]) found that allegations that the defendant dumped a pile of cement on the sidewalk in front of the plaintiffs house, tossed lighted cigarettes into the plaintiffs backyard, threw eggs on his front steps, and threatened to paint a swastika on his house were insufficient to support a cause of action for intentional infliction of emotional distress.
In Cunningham v Security Mut. Ins. Co. (260 AD2d 983 [1999]), allegations that the defendant failed to timely compensate the plaintiff for a loss leaving her without a home, adequate possessions or funds for over a year and that the defendant wrongfully accused the plaintiff of committing arson and submitting false statements under oath were also insufficient to state a cause of action.
*979 In this case, the defendant has not informed the court of the number of telephone calls that were made to him but the deposition of the nonparty George Miller states that only a few calls were made to the defendant in one month, January 2005. There is no indication that George Miller contacted anyone other than the defendant John Fairchild to discuss the debt. Further, here the fraudulent charge-backs involved the substantial monetary amount of over $80,000, and the admittedly fraudulent charges coincided with a change in the standard method used by the defendant to previously conduct business with the plaintiff, thus raising suspicions on the part of George Miller. While there is no proof that the defendants engaged in any fraudulent behavior, the monetary loss was real, substantial, affected Miller’s livelihood directly and may result in the defendants ultimately being responsible for the lost money.
While the statements made by Miller were rash, rude, callous, unprofessional and improper, the issue before the court is whether or not those statements rise to the level that would support a civil cause of action for intentional infliction of emotional harm or distress (see, Andrews v Bruk, 220 AD2d 376 [1995]; Gallagher v Consolidated Edison Co. of N.Y., 162 AD2d 657 [1990], appeal dismissed 76 NY2d 935 [1990]; Angel v Levittown Union Free School Dist. No. 5, 171 AD2d 770 [1991]; Saglioccolo v Eagle Ins. Co., 112 F3d 226 [1997]). In this case, the facts as alleged by the defendants simply do not rise to the level required for a cause of action of intentional infliction of emotional harm. It is not the function of the court to redress every slight resulting from improper use of language between adult, mature businessmen involved in a bona fide business dispute. The motion to add causes of action for emotional distress and to add a party to this litigation is denied.

 George Miller’s employment status as an independent contractor has not been disputed by the defendants but the court has no proof in the record to ascertain whether his characterization as an independent contractor is accurate.