**Paul J. HANLY, Jr. and The Andy Warhol Foundation for the Visual Arts, Plaintiffs–Appellants–Cross–Appellees,**

v.

**POWELL GOLDSTEIN, L.L.P., and James C. Rawls, Defendants–Appellees–Cross–Appellants.**

Nos. 07–1440–cv(L), 07–1591(XAP).

United States Court of Appeals, Second Circuit.

Aug. 26, 2008.

Andrea Bierstein, Hanly Conroy Bierstein Sheridan Fisher & Hayes, LLP, New York, NY, for Appellants–Cross–Appellees.

Paul J. Curran (Maris Veidemanis, on the brief), Kaye Scholer, LLP, New York, NY, for Appellees–Cross–Appellants.

Present: Hon. RICHARD C. WESLEY, Hon. DEBRA ANN LIVINGSTON and Hon. J. CLIFFORD WALLACE,[1] Circuit Judges.

### SUMMARY ORDER

Plaintiffs-appellants-cross-appellees Paul J. Hanly, Jr. and the Andy Warhol Foundation for the Visual Arts (the "Foundation") appeal from a March 12, 2007 order of the District Court for the Southern District of New York (Wood, C.J.) inasmuch as it granted a motion by defendants-appellees-cross-appellants Powell Goldstein, LLP ("PG") and James C. Rawls to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. PG and Rawls cross-appeal from the same order inasmuch as it denied a motion to dismiss the complaint under Rule 12(b)(2) for lack of personal jurisdiction. We assume familiarity with the facts and procedural history.

We review *de novo* a district court's ruling on a motion to dismiss, assuming all well-pleaded allegations to be true and construing them in plaintiffs' favor. Although the pleadings are to be read liberally, bald assertions and conclusions of law will not suffice. Plaintiffs must allege facts that raise their right to relief beyond a speculative level. *See, e.g., Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir.2008). We note that we may "affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court." *ACEquip, Ltd. v. Am. Eng'g Corp.*, 315 F.3d 151, 155 (2d Cir.2003).

### I. Jurisdiction

■ Although defendants make their jurisdictional argument in the alternative, we are required to address jurisdictional issues at the outset. *See Rationis v. AEP/Borden Indus.*, 261 F.3d 264, 267 (2d Cir.2001). In a diversity action, a court applies the long-arm statute of the forum state, in this instance, New York. *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997). A plaintiff must plead personal jurisdiction with respect to each claim asserted. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).

With respect to the claims of malicious prosecution and intentional infliction of emotional distress ("IIED"), we agree with the district court that the amended complaint adequately pleaded personal jurisdiction under New York's Civil Practice Law and Rules ("CPLR") § 302(a)(3). Under that portion of the long-arm statute, a nondomiciliary who commits a tortious act outside of New York that causes injury within the state "may be brought before a New York court to answer for his conduct if he has … an active interest in interstate or international commerce coupled with a reasonable expectation that the tortious conduct in question could have consequences within the State." *McGowan v. Smith*, 52 N.Y.2d 268, 273, 437 N.Y.S.2d 643, 419 N.E.2d 321, 323–24 (1981).

---

1. The Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Plaintiffs alleged that PG operates in Georgia, Texas, and Washington, D.C., and that it represented a client in a decade-long lawsuit in New York that involved "the expenditure of significant efforts and resources of Rawls and [PG]." They therefore alleged facts supporting the inference that defendants "derive[ ] substantial revenue from interstate or international commerce." CPLR § 302(a)(3)(ii). Plaintiffs alleged also that their reputational injuries, as well as Hanly's emotional distress, were suffered in state. Moreover, when the allegations are construed in the light most favorable to plaintiffs and all inferences are drawn in their favor, it is reasonable to conclude that when Rawls accused plaintiffs of unprofessional and criminal conduct, it was foreseeable that this would have an effect on plaintiffs in New York, where Hanly practices law and the Foundation is incorporated and subject to oversight. The district court therefore was correct to conclude that it had jurisdiction with respect to the claims of malicious prosecution and IIED.

▮ Section 302(a)(3) by its terms does not apply to plaintiffs' libel claim. *See* CPLR § 302(a)(3) (excluding "a cause of action for defamation of character"). The district court therefore turned to Section 302(a)(1)—which applies to claims arising out of a defendant's in-state business activity, *see* CPLR § 302(a)(1)(applying to a defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state")— and concluded that jurisdiction with regard to the libel claim was pleaded under that portion of the long-arm statute. The parties vigorously dispute whether the fact that Rawls's October 12, 2000 letter dis-cussed a prior lawsuit in New York establishes a "substantial" and "direct" nexus between the allegedly libelous comments and defendants' in-state activity in connection with the lawsuit. *See Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 764 (2d Cir.1983) (to establish personal jurisdiction under Section 302(a)(1), plaintiffs must show the existence of a direct and substantial nexus between the business transacted in the state and the cause of action sued upon). The question may be a close one, but we need not decide it. We have held that once a defendant properly is brought before a district court on a claim covered by Section 302(a)(3), the court may entertain claims that are not expressly covered by the long-arm statute, so long as they derive from the same nucleus of operative fact as claims that are. *See Hargrave v. Oki Nursery, Inc.,* 646 F.2d 716 (2d Cir. 1980) (where Section 302(a)(3) expressly conferred jurisdiction with respect to tort claim but not with respect to factually related contract claims, district court nevertheless had authority to hear the contract claims because they were part of the same "action"). Since the libel claim is based on the same factual predicate as the malicious prosecution and IIED claims, the district court was permitted to hear that claim under the doctrine of pendent personal jurisdiction.[2]

## II. The Merits

The parties do not dispute that New York law, which is the law of the forum, governs the claims asserted here. Hence, we look to the law of New York in assessing the adequacy of the pleadings. *See, e.g., VKK Corp. v. Nat'l Football League,*

---

**2.** Defendants argue also that even if the district court had personal jurisdiction, venue nevertheless was improper under 28 U.S.C. § 1391(a). Since venue is not a jurisdictional issue, however, *see, e.g., United States ex rel.* *Rudick v. Laird,* 412 F.2d 16, 20 (2d Cir. 1969), we need not address it before turning to the merits. We therefore assume, without deciding, that venue was pleaded adequately and turn to the substance of plaintiffs' claims.

244 F.3d 114, 129 n. 10 (2d Cir.2001) (citing cases).

### A. Libel

■ Under CPLR § 215(3), a claim for libel must be asserted within one year of the date on which the libelous material first was published, that is, displayed to a third party. *See Gelbard v. Bodary,* 270 A.D.2d 866, 866, 706 N.Y.S.2d 801, 802 (4th Dep't 2000); *Fedrizzi v. Washingtonville Cent. Sch. Dist.,* 204 A.D.2d 267, 268, 611 N.Y.S.2d 584, 585 (2d Dep't 1994). In this case, the allegedly libelous letter was published in October 2000, while the libel claim first was asserted more than four and a half years later in May 2005.

Plaintiffs contend that the claim nevertheless was timely because they did not discover the letter until November 2004 when Hanly was haled to court in France. But New York courts consistently have declined to recognize a so-called "discovery rule" for libel claims. *See, e.g., Teneriello v. Travelers Cos.,* 226 A.D.2d 1137, 1138, 641 N.Y.S.2d 482, 483 (4th Dep't 1996) ("Contrary to plaintiff's contention, the action accrued when the statements were originally published in 1991, not upon plaintiff's discovery of the statements two years later." (citations omitted)); *Karam v. First Am. Bank of N.Y.,* 190 A.D.2d 1017, 1018, 593 N.Y.S.2d 640, 642 (4th Dep't 1993) ("In an action for slander, the Statute of Limitations runs from the time of the utterance, not the discovery of the slanderous matter."). Nor have plaintiffs brought to our attention any New York authority holding, as plaintiffs strenuously urge, that the statute should be tolled where it would have been impossible for the plaintiff to discover the libel within the limitations period. We therefore agree with the district court that the statute of limitations for the libel claim had run by the time this action was commenced.

### B. Malicious Prosecution

■ "To state a claim for malicious prosecution, a plaintiff must prove (1) the initiation or continuation of legal action against him, (2) termination of the proceeding in his favor, (3) absence of probable cause to commence the proceeding, and (4) actual malice." *Rivera v. City of N.Y.,* 40 A.D.3d 334, 337, 836 N.Y.S.2d 108, 111–12 (1st Dep't 2007).

The mere fact that Rawls sent the October 12, 2000 letter to Zylberstein, thus causing Zylberstein to file a complaint against Hanly, was not enough to support a malicious prosecution claim. As we have stated, merely "reporting a crime to law enforcement and giving testimony does not constitute the 'initiation' of a criminal prosecution." *Rothstein v. Carriere,* 373 F.3d 275, 293 (2d Cir.2004); *accord Lupski v. County of Nassau,* 32 A.D.3d 997, 998, 822 N.Y.S.2d 112, 114 (2d Dep't 2006) ("The defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal, to the point where the officer is not acting of his own volition." (citations and quotations omitted)). It follows that merely reporting a crime to another individual, who in turn reports the crime to law enforcement, is insufficient to give rise to liability under New York law for malicious prosecution.

Our conclusion is not altered by the differences between the French and United States law enforcement systems, which plaintiffs expend a great deal of energy highlighting in their briefs. It may be that under the French system, a civilian may file a criminal complaint. And so it may be that for purposes of this case, Zylberstein should be considered a proxy for "law enforcement," thus bringing Rawls one step closer to the filing of the criminal charges than he would have been

had the investigation taken place in the United States. But even if Zylberstein could be considered the equivalent of the police for purposes of the malicious prosecution claim, plaintiffs still were required to allege more than the fact that Rawls reported a possible crime to Zylberstein in the October 12, 2000 letter. *See Rothstein*, 373 F.3d at 293.

Plaintiffs argue that they did so when they alleged in paragraph 40 of the amended complaint that defendants "instigated, incited, and/or aided and abetted Zylberstein." These allegations, however, do not indicate that defendants did anything other than send the October 12, 2000 letter. Paragraph 40 goes on to clarify what plaintiffs meant by "instigated, incited, and/or aided and abetted"—that defendants made defamatory remarks knowing that this would lead Zylberstein to file charges. Plaintiffs' theory therefore was that it was the October 12, 2000 letter that "instigated" and "incited" Zylberstein to file charges in France, which, as noted, was not a sufficient basis for the claim. Hence, these allegations did not bring plaintiffs closer to pleading malicious prosecution.

■ Furthermore, these assertions, as well as the remaining allegations supposedly supporting an active connection between Rawls and the French prosecution—such as that Rawls provided "substantial assistance" or "additional assistance" to Zylberstein—were too conclusory to pass muster under Federal Rule of Civil Procedure 8(a)(2). The line separating conclusory allegations from adequate ones is difficult to draw. But in our view, the relevant allegations in this case were clearly on one side of that line. Instead of alleging, for instance, what words were spoken or what actions were taken by Rawls to assist or encourage Zylberstein, the amended complaint asserts conclusions about how certain unspecified actions

should be interpreted or labeled—that is, that these indeterminate acts meet the legal standard of "aiding and abetting" or qualify as "substantial assistance." Merely reciting labels does not satisfy Rule 8(a)(2). *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief [under Rule 8(a)(2) ] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citations, quotations, and alterations omitted)). In the last analysis, we agree with the district court that the amended complaint failed to plead malicious prosecution under New York law.

## C. IIED

The standard for pleading an IIED claim under New York law is notoriously difficult to satisfy. A plaintiff must allege: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard for a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Stuto v. Fleishman,* 164 F.3d 820, 827 (2d Cir.1999) (citing *Howell v. N.Y. Post Co.,* 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699, 702 (1993)).

Hanly's severe emotional distress was alleged to be "a result of the malicious prosecution" in France. As discussed, however, the amended complaint failed to allege that Rawls had any direct involvement in the initiation of the criminal proceedings in France. It alleged simply that Rawls sent the October 12, 2000 letter and that Zylberstein and his clients made an independent decision to take the matter to court. Hence, assuming, without deciding, that the initiation of the French proceed-

ings against Hanly could qualify as sufficiently outrageous conduct under New York law, there was a failure to allege that Rawls participated in this action and therefore that he intended or disregarded a substantial risk that his actions would lead to Hanly's severe emotional distress. Plaintiffs' conclusory allegations that "defendants intended to cause Hanly severe emotional distress" were insufficient to compel a different conclusion. The district court therefore was correct in determining that the amended complaint failed to state a claim for IIED.

Accordingly, we agree with the district court that plaintiffs adequately pleaded personal jurisdiction for purposes of Rule 12(b)(2), but that the complaint nevertheless should have been dismissed under Rule 12(b)(6) for failure to state a claim. The judgment of the district court hereby is **AFFIRMED** in its entirety.

