Hoxha v Pantalone (2024 NY Slip Op 50500(U))

[*1]

Hoxha v Pantalone

2024 NY Slip Op 50500(U)

Decided on April 16, 2024

Supreme Court, Kings County

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 16, 2024
Supreme Court, Kings County

Viola Hoxha and Armand Hoxha, Plaintiffs,

against
Marco Pantalone, Defendant.

Index No. 531908/2021

Attorney for the Plaintiff
Law Office of Carlene Jadusingh
Carlene Jadusingh, Esq.
225 Broadway, Suite 1803
New York, New York 10007
(646) 415-7717
cj&commat;cjadusinghlegal.com
Attorney for Defendant
Law Offices of Richard Batelman
227 Sea Breeze Ave, Ste. 2A
Brooklyn, New York 11224
(718) 336-1456
rbatelman&commat;hotmail.com 

Francois A. Rivera, J.

Recitation in accordance with CPLR 2219 (a) of the papers considered on the notice of motion filed on March 7, 2023, under motion sequence two, by Viola Hoxha and Armand Hoxha (hereinafter the plaintiffs) for an order pursuant to CPLR 3212 granting summary judgment in the plaintiffs' favor on the issue of liability on the causes of action in the verified complaint asserted against Marco Pantalone (hereinafter the defendant). The defendant has opposed the motion.
Notice of motion
Statement of material facts
Affirmation in support
Exhibits A-H
Memorandum of law in support
Counterstatement of material facts
Affirmation in opposition
Affidavit in opposition
Exhibits A-B
Affidavit of plaintiff to authenticate video evidence
Affirmation in reply
BACKGROUND
On December 14, 2021, the plaintiffs commenced the instant action by filing a summons and verified complaint with the Kings County Clerk's office (KCCO). On January 28, 2022, the defendant interposed and filed with the KCCO an answer asserting two counterclaims. The first counterclaim was for breach of contract and the second counterclaim was for defamation. 
On May 23, 2022, plaintiff interposed and filed a reply to defendant's counterclaims with the KCCO. On May 23, 2022, the defendant filed a rejection of plaintiffs' reply to defendant's counterclaim as untimely with the KCCO.
By notice of motion filed on July 27, 2022, under motion sequence number one, plaintiffs sought an order pursuant to CPLR 3012 (d) compelling the defendant to accept the plaintiffs' late reply to defendant's counterclaims.
By decision and order dated February 1, 2023, the Court granted the plaintiffs' motion for an order pursuant to CPLR 3012 (d) compelling the defendant to accept the plaintiffs' late reply to defendant's counterclaims. As a result, issue was joined.
The verified complaint alleges one hundred and sixteen allegations in fact in support of nine denominated causes of action. 
Plaintiffs' first cause of action is for harassment. New York does not recognize a cause of action for harassment (Jacobs v 200 E. 36th Owners Corp., 281 AD2d 281 [1st Dept 2001], citing Goldstein v Tabb, 177 AD2d 470, 471 [2d Dept 1991].
Plaintiffs' second cause of action is for constructive eviction. To establish a claim of "constructive eviction," a tenant "must establish by a preponderance of the credible evidence that a landlord's wrongful acts substantially and materially deprive the tenant of the beneficial use and enjoyment of the leased premises" (Gramatan Realty Corp. v Morrell, 59 Misc 3d 1217[A] [Mount Vernon City Ct 2018]). 
Plaintiffs' third cause of action is for private nuisance. "The elements of a private nuisance cause of action are an interference (1) substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act" (Wlody v Birch Family Servs. Inc., 210 AD3d 1036, 1037 [2d Dept 2022]). 
Plaintiffs' fourth cause of action is for intentional infliction of emotional distress. "The tort has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress" (Howell v New York Post Co., 81 NY2d 115, 121 [1993]). "The element of extreme and outrageous conduct is essential, in that liability will only be imposed when the conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community'" (Joo Tae Yoo v Choi, 210 AD3d 1062, 1064 [2d Dept 2022], quoting Howell v New York Post Co., 81 NY2d 115, 122 [1993] ).
Plaintiffs' fifth cause of action is for negligent infliction of emotional distress. "A cause of action to recover damages for negligent infliction of emotional distress generally requires a [*2]plaintiff to show a breach of a duty owed to him or her which unreasonably endangered his or her physical safety or caused him or her to fear for his or her own safety" (Chiesa v McGregor, 209 AD3d 963, 966 [2d Dept 2022] [internal brackets omitted], citing Taggart v Costabile, 131 AD3d 243, 255-256 [2d Dept 2015]). 
Plaintiffs' sixth cause of action is for violation of the warranty of habitability. "Pursuant to Real Property Law § 235-b, every residential lease contains an implied warranty of habitability which is limited by its terms to three covenants: (1) that the premises are 'fit for human habitation', (2) that the premises are fit for 'the uses reasonably intended by the parties', and (3) that the[ ]occupants will not be subjected to conditions that are "dangerous, hazardous or detrimental to their life, health or safety" (Solow v Wellner, 86 NY2d 582, 587-88 [1995], citing RPAPL 235-b). 
Plaintiffs' seventh cause of action is for conversion. "To establish a cause of action to recover damages for conversion, a plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights" (Amid v Del Col, 223 AD3d 698, 700 [2d Dept 2024], quoting RD Legal Funding Partners, LP v Worby Groner Edelman & Napoli Bern, LLP, 195 AD3d 968, 970 [2d Dept 2021]).
Plaintiffs' eighth cause of action is for trespass. "Trespass is an intentional entry onto the land of another without justification or permission" (Woodhull v Town of Riverhead, 46 AD3d 802, 804 [2d Dept 2007]). "Liability for civil trespass requires the factfinder to consider whether the person, without justification or permission, either intentionally entered upon another's property, or, if entry was permitted, that the person refused to leave after permission to remain ha[s] been withdrawn" (Long Is. Gynecological Servs. v Murphy, 298 AD2d 504, 504 [2d Dept 2002], quoting Rager v McCloskey, 305 NY 75, 79 [1953]).
Plaintiffs' ninth cause of action is for negligence. "The elements of a cause of action alleging negligence are (1) the existence of a duty on the defendant's part as to the plaintiff; (2) a breach of this duty; and (3) an injury to the plaintiff as a result thereof (McKay v Town of Southampton, 220 AD3d 59, 63 [2d Dept 2023] [internal quotations omitted], quoting Poon v Nisanov, 162 AD3d 804, 806 [2d Dept 2018]).
UNDISPUTED FACTS
The parties' evidentiary submissions, statement of material facts, and counter statement of material facts established the following undisputed facts. Plaintiffs Viola Hoxha and Armand Hoxha were residential tenants in an apartment located in a building owned by defendant Marco Pantalone. The building is located at 1871 60th Street, Brooklyn, New York (hereinafter the "building"). The Plaintiffs were tenants of apartment 1R within the building (hereinafter the "apartment") where they lived with their two young children. At all times relevant to the plaintiffs' claims, the defendant was the owner and landlord of the building, and plaintiffs were residential tenants of the apartment.
Plaintiff's motion is supported by, among other things, three affidavits, screen shots of text messages between Viola Hoxha and Marco Pantelone, and video images secretly recorded by the plaintiffs. The plaintiffs were permitted to supplement the instant motion papers by submitting to the defendant and the Court the videos they recorded capturing the defendant in the plaintiffs' apartment. The submitted videos captured the defendant inside the plaintiffs' apartment on October 16, October 24, October 31, and November 7, 2021. The secretly recorded video images show Marco Pantelone entering the plaintiffs' apartment when no one was [*3]at home.
One of three affidavits was from Enio Kapedani, Viola Hoxha's brother and Armand Hoxha's brother-in-law. Another affidavit was from Erika Kapedani, Viola Hoxha's sister and Armand Hoxha's sister-in-law. Another affidavit was from Vjollca Kapedani, Viola Hoxha's mother and Armand Hoxha's mother-in-law. All three of them averred that they saw Marco Pantalone using his own key to enter the plaintiffs' apartment without knocking or asking permission. 
Plaintiffs have alleged the following disputed facts, among other. On numerous dates and occasions after plaintiffs took possession of the apartment, defendant entered the apartment without advance notice or permission, including times when the plaintiffs were sleeping. After these multiple intrusions, and in fear of her and her children's safety, Viola Hoxha installed a security camera in the apartment in or about the end of September or beginning of October 2021. Soon thereafter, she left to visit family in Nashville from October 9, 2021 to November 4, 2021. While she was away, Viola Hoxha captured recording of the defendant inside the apartment on numerous occasions. All the instances in which his image was recorded, the plaintiffs were away. Each one of those instances was without the plaintiffs' permission. 
In response to the plaintiffs' supplemental submission, the defendant admitted that he was indeed inside the plaintiffs' apartment on the four instances captured in the video recordings. He averred that his presence on each of those occasions was with the plaintiffs' permission. 
CPLR 2218 provides as follows:
"The court may order that an issue of fact raised on a motion shall be separately tried by the court or a referee. If the issue is triable of right by jury, the court shall give the parties an opportunity to demand a jury trial of such issue. Failure to make such demand within the time limited by the court, or, if no such time is limited, before trial begins, shall be deemed a waiver of the right to trial by jury. An order under this rule shall specify the issue to be tried."
CPLR 3212 (c) provides in pertinent part as follows:
(c) Immediate trial. If it appears that the only triable issues of fact arising on a motion for summary judgment relate to the amount or extent of damages, or if the motion is based on any of the grounds enumerated in subdivision (a) or (b) of rule 3211, the court may, when appropriate for the expeditious disposition of the controversy, order an immediate trial of such issues of fact raised by the motion, before a referee, before the court, or before the court and a jury, whichever may be proper.
On January 25, 2024, the Court ordered an evidentiary hearing pursuant to CPLR 2218 and 3212 (c) to determine the discrete and disputed issue of whether the defendant was present in the plaintiffs' apartment in the four instances captured in the four videos with or without the permission of the plaintiffs. The Court reasoned that such an immediate evidentiary hearing could potentially result in an expeditious resolution of the entire controversy. Neither party requested a jury trial of the discrete issue.
THE HEARING
On March 11, 2024, the evidentiary hearing was conducted virtually through Microsoft Teams. Viola Hoxha testified for the plaintiffs. Marco Pantalone testified for the defendant. Marco Pantalone admitted that he was inside the plaintiffs' apartment in four of the recorded videos which captured his image. 
The earliest video showing the defendant inside the plaintiffs' apartment was recorded on October 16, 2021, beginning at 10:33 am. The plaintiff testified that she was with her family in [*4]Nashville, Tennessee at the time and that she did not give the defendant permission to be in the plaintiffs' apartment on the date and time the recording was captured.
The next video containing the defendant was recorded on October 24, 2021, at 2:30 pm. In this video the defendant is seen in the plaintiffs' living room moving a child's highchair and then walking into the plaintiffs' kitchen and opening the freezer door of plaintiffs' refrigerator. The plaintiffs were still in Nashville, Tennessee at the time. Plaintiff testified that she did not give the defendant permission to be in their apartment on the date and time the recording was captured.
The next video of the defendant was recorded on October 31, 2021, at 10:21 am. The October 31, 2021, video shows the defendant walking into the plaintiffs' living room with a man that the plaintiff did not recognize. The defendant and the stranger sat down at plaintiffs' dining room table and had a conversation. At the time the video was taken plaintiff was still in Nashville, Tennessee. The plaintiffs did not give the defendant or the stranger in the video permission to be in the plaintiffs' apartment on the date and time the recording was captured.The final video containing the defendant was recorded on November 7, 2021, at 10:01 am. The November 7, 2021 video shows the defendant looking through paperwork of the plaintiffs. It appeared to be plaintiffs' mail. Plaintiff did not give the defendant permission to be in the plaintiffs' apartment on the date and time the recording was captured.
The defendant was asked about the man who was with him in the plaintiffs' apartment on October 31, 2021, in the video of that date. Defendant testified that he gave the man, whom he described as the new landlord, permission to enter the apartment. Defendant asserted that as landlord he did not need the plaintiffs' permission to enter or to let the man he described as the new landlord to enter with him. When asked if he would go into the plaintiffs' apartment without plaintiffs' permission at any time he wanted to, the defendant responded, "most likely".
"Trespass is an intentional entry onto the land of another without justification or permission" (Woodhull v Town of Riverhead, 46 AD3d 802, 804 [2d Dept 2007]. Liability for civil trespass requires the factfinder to consider whether the person, without justification or permission, either intentionally entered upon another's property, or, if entry was permitted, that the person refused to leave after permission to remain has been withdrawn (Long Is. Gynecological Servs. v Murphy, 298 AD2d 504, 504 [2d Dept 2002], quoting Rager v McCloskey, 305 NY 75, 79 [1953]). Here, the plaintiffs have established their entitlement to judgment as a matter of law on the issue of liability in connection with the causes of action for trespass by demonstrating that the defendant intentionally entered the plaintiffs' apartment without justification or permission on October 16, October 24, October 31, and November 7, 2021.
"Broadly speaking, trespass includes an impingement on the right to possession and thus an action for trespass may be maintained by a lessee against his landlord" (Sky Four Realty Co. v State of New York, 134 Misc 2d 810, 812 [Ct Cl 1987]). The plaintiffs were tenants in possession of apartment 1R in 1871 60th Street, Brooklyn, New York during 2021 and the defendant was their landlord at that time. There is no dispute that the defendant was inside the plaintiffs' apartment as depicted by four separate video recordings. Defendant claimed that each one of these occasions he was there with the plaintiffs' permission. The plaintiff testified that the defendant never had permission to enter the plaintiffs' apartment on the four occasions that he was recorded inside the apartment. 
After the evidentiary hearing, the Court finds that the defendant did not have permission, neither express nor implied, to be inside the plaintiffs' apartment on the four occasions that he was caught on video being there. Consequently, the plaintiffs have established the defendant's liability for four separate instances of trespass.
Plaintiffs have established the defendant's liability for trespass insofar as premised on the four separate instances of trespass set forth herein. It is otherwise denied as to any other instances of trespass alleged in the verified complaint. It is also denied as to the other fifteen causes of action alleged in the verified complaint. The plaintiffs' evidentiary submission did not eliminate all material issues of fact demonstrating plaintiffs' entitlement to judgment on the remaining issues of liability for the sixteen causes of action set forth in the verified complaint. Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers (Winegrad v New York Univ Med. Ctr., 64 NY2d 851, 853 [1985]). 
CONCLUSION
Plaintiffs Viola Hoxha and Armand Hoxha have established liability of the defendant Marco Pantalone for four separate instances of trespass occurring on October 16, 24, 31 and November 7, 2021. The issue of damages for these four instances of trespass will be tried after resolution of the issue of liability of all other causes of action asserted in the verified complaint. 
The balance of the motion by Viola Hoxha and Armand Hoxha for an order pursuant to CPLR 3212 granting summary judgment in the plaintiffs' favor on the issue of liability on all other causes of action asserted against Marco Pantalone in the verified complaint is denied.
The foregoing constitutes the decision and order of this Court.
ENTER:
J.S.C.