**Kovacs v AudioEye, Inc.**

2025 NY Slip Op 30403(U)

January 31, 2025

Supreme Court, New York County

Docket Number: Index No. 651810/2024

Judge: Anar Rathod Patel

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 45

-----------------------------------------------------------------------X

DAVID KOVACS,

Plaintiff,

- v -

AUDIOEYE, INC., DAVID MORADI, CARR BETTIS, JOHN DOES 1-10 (FICTITIOUS NAMES), ABC ENTITIES 1-10 (FICTITIOUS NAMES)

Defendants.

-----------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 651810/2024 |
| **MOTION DATES** | 08/20/2024 |
| **MOTION SEQ. NOS.** | 001, 002 |

**DECISION + ORDER ON MOTIONS**

**HON. ANAR RATHOD PATEL:**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 16–21, 32, 34, 36, 38–43, 60–69 were read on this motion to/for <u>DISMISS</u>.

The following e-filed documents, listed by NYSCEF document number (Motion 002) 22–26, 33, 35, 37, 44–49, 70–71, 75 were read on this motion to/for <u>DISMISS</u>.

### **Relevant Factual[1] and Procedural Background**

This action arises from claims asserted by Plaintiff David Kovacs ("Plaintiff" or "Kovacs") against Defendants AudioEye, Inc. ("AudioEye"), its Chief Executive Officer David Moradi ("Moradi"), and Chairman of the Board Carr Bettis ("Bettis") alleging retaliation under New York Labor Law § 740 and intentional infliction of emotional distress ("IIED") in connection with Plaintiff's termination of employment from AudioEye. Plaintiff contends that his termination was in retaliation for raising objections to and refusing to participate in an alleged securities fraud scheme. Defendants deny the allegations, and assert, *inter alia*, that Plaintiff was terminated on legitimate, non-retaliatory grounds.

Plaintiff is a former employee of AudioEye, a publicly traded company on the NASDAQ that specializes in web accessibility compliance services to businesses. NYSCEF Doc. No. 24 ("Am. Compl."), ¶ 9. Plaintiff was employed as an independent contractor from January 15, 2014 until October 26, 2016, when he was hired as an employee in the role of Strategic Advisor. *Id*. ¶¶ 19, 20. Plaintiff alleges that he was a New York resident during the relevant period and regularly reported to AudioEye's New York County office for meetings. *Id*. ¶ 6.

---

[1] The facts are taken from the Amended Complaint and are accepted as true for the purposes of the Motions to Dismiss the Amended Complaint.

651810/2024   KOVACS, DAVID vs. AUDIOEYE, INC. ET AL
Motion Nos.  001, 002

Page 1 of 7

1 of 7

Upon information and belief, Plaintiff alleges that AudioEye is formed in Delaware and registered to do business in New York, where it has an office located in New York County for the transaction of business. *Id*. ¶ 9. Defendant Moradi is a resident of Florida and has acted as CEO of AudioEye since approximately July 2020. *Id*. ¶ 11. Defendant Bettis is a resident of Texas and has served on the Board of Directors of AudioEye since approximately December 2012. Plaintiff alleges Mr. Bettis attended Board of Director meetings in New York County. *Id*. ¶¶ 13, 14.

Plaintiff alleges that he participated in telephone conversations and text messages with Mr. Moradi during the period of August 26 through September 5, 2023, wherein Mr. Moradi instructed him to participate in a scheme to use a virtual private network ("VPN") to publish fake video game reviews for a separate company, First Contact Entertainment, Inc. ("First Contact"), of which Mr. Moradi is the co-founder and in which Plaintiff holds equity. *Id*. ¶¶ 26–33. The purpose of the fake reviews was to "increase consumer demand for the game and boost the price for First Contact's shares." *Id*. ¶ 26. Plaintiff further alleges that Mr. Moradi proposed a scheme "to help increase the price of AudioEye's stock by conducting market manipulation and insider trading activities for AudioEye." *Id*. ¶ 27. Plaintiff alleges that during calls on August 28 and 29, Mr. Moradi "guided Plaintiff through the process of creating the VPN, helped Plaintiff create fake reviews for First Contact, and discussed wealthy investors that Plaintiff knew who could participate in the proposed insider trading scheme for AudioEye." *Id*. ¶ 31. Plaintiff states that he "agreed to publish the fake reviews using the VPN" because he feared retaliation, including termination of his employment and deprivation of his equity in First Contact. *Id*. ¶ 32. Plaintiff published three fake reviews for First Contact and enlisted others to help him. *Id*. Plaintiff voiced his objection to the proposed scheme to Mr. Moradi and was met with threats concerning his employment, healthcare coverage, and equity. *Id*. ¶¶ 28–35. Plaintiff does not allege any trades or transactions involving First Contact and/or AudioEye in connection with the purported scheme.

Plaintiff states that he informed Mr. Bettis "that Moradi has asked Plaintiff to do some things that were unethical and that made Plaintiff uncomfortable" in late August 2023. *Id*. ¶ 35.

Plaintiff alleges that, on November 13, 2023, he emailed the Vice President of Human Resources and Mr. Bettis to request "an extremely confidential conversation," and requested that Mr. Bettis participate "due to his ethics and just being an amazing and outstanding human being." *Id*. ¶ 36. Plaintiff maintains that the purpose of the meeting was to report Mr. Moradi's request "to use VPN to engage in insider trading, market manipulation, and a pump and dump scheme that Plaintiff believed to be illegal." *Id*. The same day, and the following day, Plaintiff had telephone conversations with Mr. Bettis whereby Mr. Bettis stated that "Moradi was becoming enraged with Plaintiff" and discouraged Plaintiff from speaking with Human Resources. *Id*. ¶ 39. Also in late November, Plaintiff states that Mr. Bettis informed him that Mr. Moradi was aware that Plaintiff had reached out to Human Resources. *Id*. ¶ 40. Plaintiff does not allege that he disclosed and/or threatened to disclose the purported scheme to Mr. Bettis, Mr. Moradi, or Human Resources.

On January 17, 2024, AudioEye terminated Plaintiff's employment "for cause." *Id*. ¶ 43. On or about February 20, 2024, AudioEye informed Plaintiff that he was terminated for allegedly mispresenting his educational background and work history when he was hired. *Id*. ¶ 46.

On April 5, 2024, Plaintiff commenced this action with the filing of the Summons and Complaint.[2] NYSCEF Doc. No. 1 (Summons and Compl). Plaintiff filed an Amended Complaint on June 26, 2024, asserting four causes of action: (I) retaliation under New York Labor Law § 740, (II) tortious interference with prospective business relations, (III) defamation, and (IV) intentional infliction of emotional distress (IIED). Defendant Bettis moves to dismiss the Amended Complaint pursuant to CPLR §§ 3211 (a)(1), (7), and (a)(8); Defendants AudioEye and Moradi move to dismiss the Amended Complaint pursuant to CPLR §§ 3211 (a)(7) and 3016(a), (b). In his Opposition to Defendants' Motions, Plaintiff expressly abandons the causes of action for defamation and tortious interference. NYSCEF Doc. No. 44 (Pl. Opp'n) at n.1. Accordingly, Counts II and III of the Amended Complaint are dismissed with prejudice.

## Legal Discussion and Analysis

### I. *Personal Jurisdiction (CPLR 3211(a)(8))*

Defendant Bettis moves to dismiss the claims against him for lack of personal jurisdiction under CPLR § 3211(a)(8), asserting that Plaintiff has not sufficiently plead that New York's long-arm statute confers specific jurisdiction pursuant to CPLR § 302(a)(1), (a)(3)(i), and/or (a)(3)(iii). The Court finds that the allegations of regular, work-related communications with Plaintiff, who alleges he was located in New York, from which the causes of action arise are sufficient as a matter of law to confer personal jurisdiction over Defendant Bettis pursuant to CPLR § 302(a)(1).

CPLR § 302 (a)(1) authorizes the assertion of long-arm jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." CPLR § 302 (a)(1) is a "single act statute," and therefore physical presence is not required and one New York transaction is sufficient for personal jurisdiction. The statute applies where the defendant's New York activities were purposeful and substantially related to the claim. *D&R Global Selections, S.L. v Bodega Olegario Falcón Piñeiro*, 90 A.D.3d 403, 404 (1st Dept. 2011). "'Purposeful'" activities are defined as "'those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007)). Ultimately, courts must examine the totality of the circumstances to determine whether activities within the state are sufficient to support personal jurisdiction. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 61 (2d Cir.1985) (internal citations omitted).

Plaintiff alleges that, during the relevant period, he was a resident of New York, he engaged in regular communications with Mr. Bettis, and that those communications were in connection with Plaintiff's employment with AudioEye from which this action arises. *See, e.g.*, Am. Compl. ¶¶ 35, 39–41. Defendant Bettis, a Texas resident, avers that he had limited contacts with New York, although he admits to attending AudioEye Board meetings in New York and that he was aware that Plaintiff resided in New York; he does not dispute that he engaged in regular, work-related communications with Plaintiff *via* telephone and e-mail. NYSCEF Doc. No. 20 (Bettis Aff.) at ¶¶ 5, 8. The Court finds that Mr. Bettis "project[ed] himself into this state" through regular

---

[2] On April 10, 2024, AudioEye and Mr. Moradi commenced a separate action in Florida State Court against Mr. Kovacs alleging claims of fraudulent inducement, defamation, and unjust enrichment. *See* NYSCEF Doc. No. 63 (10/31/24 Fl. Cir. Ct. Order).

**651810/2024 KOVACS, DAVID vs. AUDIOEYE, INC. ET AL** **Page 3 of 7**
Motion Nos. 001, 002

3 of 7

phone calls and e-mails with a subordinate employee, Mr. Kovacs, related to his role at AudioEye as alleged in the Amended Complaint. *See Paterno v. Laser Spine Inst.*, 24 N.Y.3D 370, 376 (2014) (internal citations omitted). Accordingly, Plaintiff's allegations are sufficient to establish that Mr. Bettis purposefully availed himself of the privilege of conducting business in New York. *See Kumar v. Opera Sols. OPCO, LLC*, No. 1:20-CV-6824-GHW, 2021 WL 4442832, at \*9 (S.D.N.Y. Sept. 28, 2021); *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 358–59 (S.D.N.Y. 2007) (finding personal jurisdiction where defendants communicated with plaintiff who worked from home in New York City about issues relating to her employment).

Furthermore, the Court finds that the exercise of personal jurisdiction over Mr. Bettis comports with due process where he had sufficient work-related communications with Plaintiff, is alleged to have known Plaintiff was in New York, *see* NYSCEF Doc. No. 39 (Kovacs Aff.), ¶¶ 8–10, and that the effects of those communications would be felt in New York. *See Kumar*, 2021 WL 4442832, at \*10. Ultimately, Mr. Bettis, in his capacity of Executive Chairman and Chairman of the Board of AudioEye, purposefully reached into New York State pursuant to those work-related communications with Plaintiff.

Defendant's argument that Plaintiff relies solely on federal cases is unavailing where those cases apply New York's long arm statute to factually analogous circumstances. Further, while Mr. Bettis directs the Court to a ruling in the Florida action, *this* Court must accept the factual allegations in the Amended Complaint as true on a motion to dismiss, including with respect to allegations concerning personal jurisdiction. *See also James v. iFinex Inc.*, 185 A.D.3d 22, 30, 127 (2020) (plaintiff "need only make a 'sufficient start' in demonstrating, *prima facie*, the existence of personal jurisdiction, since [*sic*] facts relevant to this determination are frequently in the exclusive control of the opposing party and will only be uncovered during discovery") (internal citations omitted).

Accordingly, the Court finds that Defendant Bettis is subject to personal jurisdiction under CPLR § 302(a)(1). The Court need not address whether personal jurisdiction is conferred pursuant to CPLR § (a)(3)(i), and/or (a)(3)(iii).

## II. *Failure to State a Claim (CPLR 3211(a)(7))*

Plaintiff fails to state a cause of action for retaliation under Labor Law § 740 because the Amended Complaint does not allege Defendants engaged in any specific activities that Plaintiff reasonably believed were illegal and that Plaintiff disclosed (or threatened to disclose) such activities. Plaintiff likewise fails to state of a cause of action for IIED because the allegations are patently insufficient to identify "extreme and outrageous" conduct. As a preliminary matter, the Court observes that this is not a securities fraud action—it is an employment case where the inquiry before the Court is whether the Amended Complaint states a claim for retaliation pursuant to Labor Law § 740.

"A party may move for judgment dismissing one or more causes of action asserted against him on the ground that:… (7) the pleading fails to state a cause of action." CPLR § 3211(a)(7). On a motion to dismiss brought pursuant to CPLR § 3211(a)(7), "pleadings are to be afforded a

**651810/2024 KOVACS, DAVID vs. AUDIOEYE, INC. ET AL**
**Motion Nos. 001, 002**

**Page 4 of 7**

4 of 7

liberal construction, allegations are taken as true, the plaintiff is afforded every possible inference, and a determination is made only as to whether the facts as alleged fit within any cognizable legal theory." *CSC Holdings, LLC v. Samsung Elecs. Am., Inc.*, 146 N.Y.S.3d 17, 18 (2021) (internal citations omitted). Nevertheless, "[d]ismissal of the complaint is warranted if the [movant] fails to assert facts in support of an element of the claim, or if the factual allegations and inferences drawn from them do not allow for an enforceable right of recovery." *Connaughton v. Chipotle Mexican Grill, Inc.*, 75 N.E.3d 1159, 1162 (N.Y. 2017) (internal citations omitted). Courts will grant a motion to dismiss where a movant states a cognizable cause of action but fails to assert a material fact necessary to meet an element of the claim. *See e.g., Arnon Ltd v. Beierwaltes*, 3 N.Y.S.3d 31, 33 (2015).

A. Retaliation Under New York Labor Law § 740

New York Labor Law § 740, otherwise known as New York's whistleblower law, prohibits an employer from taking "any retaliatory action against an employee" because an employee "discloses, or threatens to disclose" "an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation." N.Y. Labor Law § 740(a)(2). "The provisions of Labor Law § 740 regarding retaliatory discharge are to be strictly construed." *Cotrone v. Consolidated Edison Co. of N.Y., Inc.*, 50 A.D.3d 354 (1st Dept. 2008). An employee need only allege a reasonable belief that the activity in question was in violation of the law, and there is no requirement that the employee identify the actual law or regulation violated. *Webb-Weber v. Cmty. Action for Hum. Servs., Inc.*, 23 N.Y.3d 448, 453 (2014); *see also Clendenin v VOA of AM. — Greater N.Y. Inc.*, 214 A.D.3d 496, 497 (1st Dept. 2023).

The complaint "must identify the particular activities, policies or practices in which the employer allegedly engaged." *Webb-Weber*, 23 N.Y.3d at 453–54, (holding plaintiff sufficiently alleged violations of various laws, rules or regulations where plaintiff had complained about inadequate fire safety, the falsification of medication and treatment records, and deficiencies in a facility). Courts routinely dismiss retaliation claims when the allegations fail to identify the specific activities undertaken by the employer that are reasonably believed to be unlawful. *See Komorek v. Conflict Int'l, Inc.*, 2024 WL 1484249, at *6 (S.D.N.Y. Mar. 29, 2024) ("Plaintiffs fail to identify any practices that [defendant] itself engaged in that [plaintiff] reasonably believed were illegal.").

Here, Plaintiff asserts that Defendant Moradi directed him to "use a VPN to engage in insider trading, market manipulation, and a pump and dump scheme that Plaintiff believed to be illegal." Am. Compl., ¶ 36. Plaintiff's sole allegation as to any activity related to the purported scheme is that he published three "fake" reviews related to a game produced by First Contact. *Id*. ¶ 32. Plaintiff does not identify, for example, any trades or transactions that were executed as part of the alleged scheme—be it an insider trading, pump-and-dump scheme, or otherwise. Plaintiff does not—and cannot—allege that the publishing of fake reviews in and of itself gives rise to unlawful activity. With respect to allegations that Mr. Moradi proposed a scheme to manipulate the share price of AudioEye, the allegations stop just there—Plaintiff does not allege that any activity related to this proposed scheme occurred.

**651810/2024  KOVACS, DAVID vs. AUDIOEYE, INC. ET AL**
**Motion Nos.  001, 002**

**Page 5 of 7**

5 of 7

[* 5]

Moreover, Plaintiff fails to allege that he threatened to disclose or disclosed the purported illegal activity. The Complaint lacks factual allegations demonstrating that Plaintiff's internal objections were brought to the attention of Mr. Moradi, Mr. Bettis, or AudioEye. Plaintiff merely alleges that he contacted Human Resources and Mr. Bettis to schedule a meeting. Am. Compl. ¶ 36. He does not allege that he informed either party as to the nature of and substance of the issues he wished to raise at the meeting. He subsequently did not participate in any meeting with Human Resources or Mr. Moradi to report the alleged illegal activity. Plaintiff also does not allege that he disclosed the purported scheme to Mr. Bettis and therefore, there would be no basis for Mr. Bettis to engage in retaliation against him. Plaintiff only alleges that he "told BETTIS that MORADI had asked Plaintiff to do some things that were unethical and that made Plaintiff uncomfortable." *Id.* ¶ 35.

Absent specific allegations showing Defendants' awareness of Plaintiff's protected activity, there can be no inference of retaliatory intent. *See Thacker v. HSBC Bank USA, N.A.*, No. 1:22-CV-7120-GHW, 2023 WL 3061336, at *8 (S.D.N.Y. Apr. 24, 2023) (dismissing § 740 claim where plaintiff did not adequately articulate what she reported to defendant's legal team); *Nadkarni v. N. Shore-Long Island Jewish Health Sys.*, 21 A.D.3d 354, 355 (2d Dept. 2005) (dismissing retaliation claim where plaintiff failed to show that the defendant was aware of alleged whistleblowing activities).

In sum, Plaintiff has failed to plead sufficient facts to state a claim for retaliation under Labor Law § 740 against Defendants Moradi, Bettis, and AudioEye and therefore, Count I of the Amended Complaint is dismissed.

B. <u>Intentional Infliction of Emotional Distress (IIED)</u>

New York courts have consistently adhered to a stringent standard required to sustain a claim for IIED, and particularly in the employment context. To succeed, a plaintiff must allege conduct that is: (1) extreme and outrageous; (2) intended to cause, or recklessly disregards a substantial probability of causing, severe emotional distress; (3) causally connected to the emotional distress; and (4) results in severe emotional distress. *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121–22 (1993). "'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (internal citations omitted); *see also Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983). Here, Plaintiff's allegations do not set forth the requisite extreme and outrageous conduct necessary to sustain such claim.

As Defendants Moradi and AudioEye aptly point out, the Amended Complaint is devoid of any allegations that bear upon the IIED claim. Plaintiff's allegations that Mr. Moradi threatened to withdraw healthcare benefits and was aware of Plaintiff's planned surgery, *see* Am. Compl. ¶¶ 28–30, are belied by the fact that Plaintiff's coverage could not terminate as of the date of termination and Plaintiff is eligible for healthcare insurance in spite of his termination. *See* NYSCEF Doc. No. 71 (1/22/24 COBRA Notice). Further, Plaintiff's allegations that he suffered severe emotional distress are vague and conclusory. *See* Am. Compl. ¶¶ 85, 86.

651810/2024 KOVACS, DAVID vs. AUDIOEYE, INC. ET AL
Motion Nos. 001, 002

Page 6 of 7

6 of 7

[* 6]

Plaintiff attempts to cure this manifest defect by tacking on allegations through the submission of an Affirmation. *See* NYSCEF Doc. No. 39 at ¶¶ 13–18. Plaintiff alleges that Defendants were aware that Plaintiff suffered from PTSD from a 2006 sexual assault and was therefore more susceptible to emotional distress. Plaintiff alleges that he informed Messrs. Moradi and Bettis that he underwent a surgery in November 2022 that cost ~$95,000 and was covered by AudioEye insurance. He planned to undergo an additional surgery in January 2024, and believed it would also be covered by AudioEye insurance. Plaintiff alleges that Mr. Moradi threatened to withhold his healthcare benefits if he did not participate in the purported scheme and that Mr. Bettis threatened that Mr. Moradi would ruin Plaintiff's life. Even considering these allegations contained in Plaintiff's Affirmation, they cannot—even in the light most favorable to Plaintiff— be considered "utterly intolerable in a civilized community." *Holwell*, 81 N.Y.2d at 473; *see also Campbell v. Columbia Univ.*, 2023 WL 6038024, at *6 (S.D.N.Y. Sept. 15, 2023) (denying a student a scholarship and financial aid "is not an act 'so outrageous in character, and so extreme in degree'" to state a claim for IIED); *Dillon v. City of N.Y.*, 261 A.D.2d 34, 41 (1st Dept. 1999) (disclosing plaintiff's termination and making disparaging remarks, including a vulgar epithet, did not meet the IIED standard).

The Court has considered the parties' remaining contentions and finds them unavailing. Upon the foregoing, it is hereby

**ORDERED** that Defendant Bettis' Motion to Dismiss Counts I and IV of the Amended Complaint (Mot. Seq. No. 001) is GRANTED pursuant to CPLR § 3211(a)(7) with prejudice; and it is further

**ORDERED** that Defendants Kovacs' and AudioEye Inc.'s Motion to Dismiss Counts I and IV of the Amended Complaint (Mot. Seq. No. 002) is GRANTED pursuant to § 3211(a)(7) with prejudice; and it is further

**ORDERED** that Counts II and III of the Amended Complaint are dismissed with prejudice pursuant to Plaintiff's lack of opposition to Defendants' Motions to Dismiss Counts II and III, and therefore the Amended Complaint is dismissed in its entirety.

The foregoing constitutes the Decision and Order of this Court.

| **1/31/2025** | | *A R Patel* |
| --- | --- | --- |
| **DATE** | | **ANAR RATHOD PATEL, A.J.S.C.** |

| **CHECK ONE:** | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- |
| | X | GRANTED | DENIED | GRANTED IN PART | OTHER |
| **APPLICATION:** | | SETTLE ORDER | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**651810/2024  KOVACS, DAVID vs. AUDIOEYE, INC. ET AL**
**Motion Nos.  001, 002**                                                                                    **Page 7 of 7**

7 of 7